DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

JIMMY BETHEA,                                )
                                             )
                         Plaintiff,          )
                                             )
          vs.                                )     Civil Action No. 11-51
                                             )
MERCHANTS COMMERCIAL BANK,                   )
et al.,                                      )
                                             )
                         Defendants.         )
                                             )
                                             )

AMBROSE, Senior District Judge

# OPINION AND ORDER

## Synopsis

Plaintiff Jimmy Bethea was employed by Defendant Merchants Commercial Bank

("MCB") as Senior Client Development Officer during CMB's inception, and subsequently was

named its Chief Credit/Lending Officer.  Plaintiff claims that, as a black male over the age of

forty, he was denied reviews, compensation and benefits that were provided to younger, female

and/or white employees and officers, and ultimately terminated from his employment, in

violation of the Civil Rights laws of the United States and Virgin Islands and in breach of his

employment contract.  He further claims that he was retaliated against for complaining about

MCB's failure to make loans to non-white loan applicants and making improper loans to

insiders, in violation of United States and Virgin Islands whistleblower laws.  Finally, Plaintiff

alleges that MCB's officers, board of directors and attorneys defamed him, which action

constitutes interference with his contractual relations.  Defendants have moved to dismiss the

1

complaint in its entirety, and MCB has also moved alternatively for summary judgment dismissing Plaintiff's claims.  For the reasons set forth below, I deny MCB's motion for summary judgment, grant Defendants' motions to dismiss in part and deny them in part, and also grant Plaintiff leave to file an amended complaint.

## I.  Legal Standard on Motion to Dismiss

In deciding a motion to dismiss under Fed R. Civ. P. 12(b)(6), all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff.  Haspel v. State Farm Mut. Auto. Ins. Co., 2007 WL 2030272, at *1 (3d Cir. July 16, 2007).  In the last two years, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  After the Supreme Court's opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), "it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Fowler, 578 F.3d at 210 (quoting Iqbal, 129 S. Ct. at 1949).

"[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated. . . .Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-211 (citing Iqbal, 129 S. Ct. at 1950).  "As the Supreme Court instructed in *Iqbal*, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Id. at

211 (quoting Iqbal, 129 S. Ct. at 1949).

## II.  MCB's Motion for Summary Judgment

MCB alternatively has moved for summary judgment dismissing Plaintiff's claims on

their merits.  In most circumstances, "summary judgment should only be granted 'if, *after*

*discovery*, the nonmoving party has failed to make a sufficient showing on an essential element

of its case with respect to which it has the burden of proof."  Hellstrom v. U.S. Dep't of VA

Affairs, 201 F.3d 94, 97 (2d Cir. 2000)(emphasis in original) (citing Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986)).  "Only in the rarest of cases may summary judgment be granted

against a plaintiff who has not been afforded the opportunity to conduct discovery." Id.; see also,

Reed v. Staniero, 2007 WL 3430935, at *7 (D.N.J. Nov. 13, 2007) (examining cases and denying

defendant's pre-discovery motion for summary judgment).

Plaintiff herein has had no opportunity to conduct discovery, and alternatively has moved

pursuant to Rule 56(d) for the opportunity to conduct discovery.   I find MCB's motion for

summary judgment prior to discovery to be premature.  Accordingly, I deny MCB's motion for

summary judgment without prejudice to refiling after discovery has concluded, and I deny

Plaintiff's Rule 56(d) motion as moot.  See Reed, 2007 WL 3430935, at *7 (discussing the

applicability of a Rule 56(d) motion where no meaningful discovery has yet taken place).

### III. Plaintiff's Factual Allegations[1]

By letter dated November 18, 2005 (the "Offer Letter"), Plaintiff received an offer from Merchants Financial LLC, MCB's precursor, for the position of Senior Client Development Officer. (Docket No. 37-1, at 6.)[2] The Offer Letter explained that Plaintiff "will be the primary party responsible for developing profitable client relationships centered on the clients' commercial loan relationships." (Id.) The position paid an annual salary of $90,000, with eligibility for an annual incentive, and indicated the Board of Directors' intent to extend a stock option program to senior management members. (Id.) Additional benefits included monthly dues on civic and social organizations, three weeks paid vacation, health and dental insurance, reimbursement of appropriate business related expenses, participation in a retirement plan, and relocation assistance. (Id. at 7.) Plaintiff signed the Offer Letter and began employment with Merchants Financial, LLC, in January 2006. (Docket No. 1, at ¶17.)

In June 2006, Plaintiff's position was changed to Chief Credit/Lending Officer in connection with the conversion of Merchants Financial to MCB and as required for MCB to obtain a banking license from the Virgin Islands Banking Board and the FDIC. (Id. at ¶¶20-21.) Plaintiff alleges that MCB agreed to pay him additional compensation for taking on these additional responsibilities. (Id. at ¶¶ 22-23.) On or about that time, MCB issued an Employee

---

[1] Plaintiff's detailed complaint encompasses thirty-four pages, one hundred fifty-seven paragraphs and twelve counts. In order to avoid extensive repetition of such lengthy material, I will discuss the parties and general allegations herein, but address Plaintiff's specific allegations in connection with the motion to dismiss each of the counts.

[2] MCB also moves this Court for summary judgment and submits documentary evidence in support thereof, including a copy of the Offer Letter. Because the Offer Letter is referred to in the Complaint and forms a basis of Plaintiff's breach of contract claims, I can consider the Offer Letter in ruling on a motion to dismiss. See, e.g. Bostic v. AT&T of the Virgin Islands, 166 F. Supp.2d 350, 354 (D. V.I. 2001) (a district court may take into account "undisputedly authentic documents that a defendant attaches as exhibits to a motion to dismiss if the plaintiff's claims are based on the document").

Handbook (the "Handbook")[3] detailing its employment practices, including that it would not tolerate discrimination or harassment, prohibited retaliation for notifying it of a breach of bank policies, detailed benefit plans, and required annual performance reviews of employees.  (Id. at 29; Docket No. 37-1, at 8.)  The Handbook further provides that "[t]he policies outlined in this handbook are designed to serve as guidelines to keep you informed about relevant facts about your employment.  They are not intended to create any kind of contractual relationship." (Docket No. 37-1, at 9.)  On November 9, 2006, and again on December 17, 2009, Plaintiff signed an employee acknowledgement stating that:

> I understand and acknowledge I have no express or implied employment contract with the Bank, that my employment relationship with the Bank is 'at will,' and that the Bank and I each have the right to terminate the employment relationship at any time, subject to applicable law.  I understand my employment with the Bank is for an indefinite duration and that I am not employed for any specific period of time.
>
> I further understand that any benefits, policies or procedures extended or implemented by the Bank during the term of employment, including but not limited to those described in the Employee Handbook that I received on this date, are not intended to and do not create an express or implied contract, and may be modified, supplemented, or discontinued by the Bank with or without notice or reason.

(Id. at 11, 12.)

Defendant James E. Crites ("Crites"), a white male over the age of 40, served as President of Merchants Financial, LLC and became the Chief Executive Officer of MCB. (Docket No. 1, at ¶¶ 18, 20.)  Crites was also the Human Resources contact designated in the Employee Handbook.  (Id. at ¶ 29.)  Plaintiff alleges that Crites proposed loans to shareholders that were on preferential terms and that did not meet the standards set forth in MCB's loan policies, and pressured Plaintiff to approve such loans.  (Id.  at ¶¶42-43.)   In 2006 and 2007,

---

[3] See footnote 2.

5

Crites refused to give Plaintiff his annual review or accompanying raises and ignored Plaintiff's written complaints to this effect.  (Id. at ¶¶53-54.)  In May 2008, Crites gave Plaintiff a draft performance review for 2007 that falsely indicated that Plaintiff had not met his loan portfolio growth targets for the year.  (Id. at ¶58.)  Plaintiff alleges that Crites engaged in a pattern of excluding Plaintiff from senior management meetings, undermining his role and responsibilities, harassing Plaintiff about legal, accounting and lending matters, and attempting to coerce Plaintiff into approving insider and other improper loan deals.  (Id. at ¶¶ 60-8.)  On February 21, 2010, Crites, on behalf of MCB, sent Plaintiff a letter via email which falsely accused Plaintiff of improperly managing the loan portfolio, substandard new loan production volume, failure to develop and manage correspondent lending relationships, poor quality loan underwriting, and unsatisfactory administration of construction loans.  (Id. at ¶ 26.)

Defendant Annette Williams ("Williams") served as MCB's chief financial officer. Plaintiff alleges that Williams is a comparator and received a pay raise and an additional lump sum payment compensation in 2008, while Plaintiff did not.  (Id. at ¶56, 105-07.)  Plaintiff further alleges that Williams, in conjunction with Crites, presented the Board of Directors (the "Board") with an unrealistic loan portfolio projection for 2009, in an effort to set Plaintiff up for failure, and, along with Crites and Michael Burgamy, failed to have MCB perform annual external loan reviews, which resulted in an FDIC downgrade, also blamed on Plaintiff. (Id. at ¶¶ 70, 91.)  Williams participated in Plaintiff's termination.  (Id. at ¶99.)

Defendants William Cashion ("Cashion"), David McCay ("McCay"), Thomas Johnson ("Johnson") and Waring Partridge ("Partridge") are all members of MCB's Board.  Plaintiff alleges that the Board violated MCB's policies and federal regulations by approving insider

6

loans to members of the Board on more favorable terms than loans made to the public. (Id. at 78.)  In March 2009, the Board voted to eliminate Plaintiff's loan approval authority.  (Id. at 82.)

Defendant Steven Simon ("Simon") served on MCB's Board and, beginning in late 2008, served as Chair of the Director's Loan Committee. (Id. at ¶47.)  In addition to the allegations generally addressed to the Board, Plaintiff alleges specifically that, in March 2009, Simon suggested to the Board that all loans must be approved by the Director's Loan Committee, and the Board approved this change.  (Id. at ¶ 48.)  Simon refused to approve loans to applicants that he did not personally like and requested a loan to himself to open a start-up car auction business in the States. (Id. at ¶¶49, 75.)  Plaintiff further alleges that Simon made hard money loans in competition with MCB, attempted to get MCB to refinance those loans, and tried to influence MCB to offer loans at higher interest rates, in order to make his own hard money loans more competitive. (Id. at ¶50.)  As a result of Plaintiff's complaints of violations of the Bank's policy manual and loans to insiders, Simon set out to isolate Plaintiff so that he could be terminated. (Id. at 59.)

Defendant Michael Burgamy ("Burgamy") sits on MCB's Board, serves as Chair of the Audit Committee, and is also a shareholder.  (Id. at ¶¶ 91, 93.)  Plaintiff alleges that Burgamy, in conjunction with Simon and Crites, set out to isolate Plaintiff in preparation for his termination. (Id. at ¶ 59.)  Burgamy sought a loan using the subordinated debt of a bank in Colorado as collateral, in contravention of MCB's policy, which loan was approved by the Board. (Id. at ¶93.)  In August 2009, Plaintiff wrote a letter to the Audit Committee expressing his concerns about improper loans, a lack of support from Crites, and that Crites was creating a hostile work

environment.  (Id. at ¶84.)  The Audit Committee did not investigate or respond to Plaintiff's allegations.  (Id. at ¶85.)

Defendant Tom Bolt ("Bolt") is a shareholder of MCB and, through his law firm, Defendant BoltNagi, P.C. ("BoltNagi"), acts as MCB's attorney in various matters.  (Id. at ¶5.) Plaintiff alleges that Bolt signed guarantees for outside clients in connection with MCB's loan to those outside clients, and issued an opinion letter supporting the guarantees.  The outside clients subsequently claimed that Bolt had not had authority to guarantee the loans in their names.  (Id. at ¶¶ 30-32.)  The problems with the guarantee documentation were subsequently blamed on Plaintiff by Bolt and Crites.  (Id. at ¶ 87.)  Beginning in 2006, Bolt repeatedly spoke to Plaintiff with a Southern accent and called him "boy.' (Id. at ¶34.)  Plaintiff alleges that Bolt criticized Plaintiff in front of the Board regarding non-legal matters and would aggressively question and verbally attack Plaintiff in an attempt to turn the Board against Plaintiff.  (Id. at ¶¶ 69, 98.)  Bolt set out to isolate Plaintiff in retaliation for Plaintiff's refusal to use Bolt or BoltNagi to represent MCB.  (Id. at ¶59.)

## IV. Defendants' Motions to Dismiss[4]

### A.  Count I – Title VII

Plaintiff has clarified that he alleges three claims arising under Title VII:  (1) race and sex discrimination; (2) retaliation; and (3) hostile work environment.  (Docket No. 81, at 4.)  I will address each of these claims *seriatim*.

---

[4] While not specified in the Complaint, Plaintiff has stipulated that Counts I, II, III, IV and X apply only to Defendant MCB, as Plaintiff's employer.  Count IX only applies to the Director and Officer Defendants and Count VIII applies only to MCB and the Director Defendants.

### 1. Discrimination

In order to plead a prima facie case of discrimination under Title VII, be it based on race or sex discrimination, a plaintiff must allege that:  (1) he was a member of the protected class; (2) qualified for his position; and (3) that nonmembers of the protected class were treated more favorably with respect to compensation, terms, conditions or privileges of employment.  Bostic v. AT&T of the Virgin Islands, 166 F. Supp.2d 350, 363 (D.V.I. 2001).  "While the plaintiff in a discriminatory treatment suit must ultimately proffer either direct or circumstantial evidence that the protected trait played a role in the employer's decision-making process and had a determinative influence on the outcome of that process, this is not necessary for Plaintiff's claim to survive a Motion to Dismiss."  Cameau v. Mount Airy No.1 LLC, 2010 WL 5093083, at *3 (M.D. Pa. Dec. 7, 2010) (internal quotations omitted).  "Even post- Twombly, . . .a plaintiff is not required to establish the elements of a prima facie case, but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009).

Plaintiff has alleged that he is a black male, that he was the only male employee apart from Crites for a substantial amount of the period in question, and that female and white employees were treated more favorably than he was, in that they were not discharged or blamed for similar conduct, were given better pay increases and bonus compensation, and flexible work arrangements.  (Complaint, ¶¶2, 3, 25-16, 105, 107.)  Plaintiff further alleges that he was not given annual reviews and that "female employees who worked for and reported to Plaintiff, and other bank employees, were paid bonuses at the end of 2008 when Plaintiff was not as a result of discrimination and retaliation."  (Id. at ¶ 57.)  When the Bank moved into a new building,

Plaintiff was given a small, unfavorable office, and the office he should have received was given to a junior female employee.  (Id. at ¶73.)  Plaintiff alleges that he was replaced by a younger white male. (Id. at ¶103.)  Finally, Plaintiff alleges that Crites, a white male, was not discharged for his loan portfolio origination shortfalls, problems with his loan portfolio, inadequate staffing to handle loans, violations of the Bank loan policies and FDIC regulations, failure to have loan reviews performed by an outside audit firm leading to FDIC criticism of the Bank, and other violations of Bank policies.  (Id. at ¶104.)  I find that these detailed factual allegations are more than adequate to state a claim for employment discrimination on the basis of sex and race.  See Cameau, 2010 WL 5093083, at *3 (denying motion to dismiss Title VII claim where plaintiff had alleged that he was black, was treated differently from his fellow, white managers in the way he was scrutinized and not allowed to independently perform his work duties, and that this discrimination led to his being blamed for mistakes at work that were not his fault and ultimately to his termination).  Accordingly, I deny MCB's motion to dismiss Plaintiff's claim for race and gender discrimination under Title VII.[5]

### 2. Retaliation

In order to establish a claim for retaliation under Title VII, a plaintiff must plead that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  See Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001).

---

[5] Plaintiff also argues that he has alleged a claim under section 1981.  To establish a right to relief under section 1981, a plaintiff must allege (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in §1981.  See Cameau, 2010 WL 5093083, at *4.  The same allegations that support Plaintiff's Title VII claim are sufficient to allege a claim under section 1981.  Id.

MCB argues that Plaintiff has not alleged that he engaged in protected activity.  I agree.  "[O]nly complaints about discrimination prohibited by Title VII – that is, discrimination on the basis of race, color, religion, sex or national origin, 42 U.S.C. §2000e-2 – constitute 'protected activity.'  Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII."  <u>Davis v. City of Newark</u>, 2011 WL 815678, at *1 (3d Cir. Mar. 10, 2011).

Plaintiff alleges that at various times he complained about his compensation and other terms of employment and of violations of the Bank's policy manuals, including that the Bank did not treat loan applications by people of color on the same favorable terms as white loan applicants.  (Complaint, ¶¶ 54, 57, 59, 74.)  None of these complaints constitute protected activity under Title VII.  <u>See Davis</u>, 2011 WL 815678, at *1 (dismissing retaliation claim where plaintiff's "sundry complaints to her superiors fail to identify any conduct proscribed by Title VII").  While Plaintiff has alleged in a conclusory manner that he complained of "discrimination," (Complaint, ¶¶ 57, 60, 84), these nonfactual allegations, which do not identify the nature of his complaint, or even when or to whom it was made, are insufficient to survive a motion to dismiss.  Accordingly, I grant MCB's motion to dismiss Plaintiff's claim of Title VII retaliation without prejudice.[6]

### 3.  Hostile Work Environment

"To establish a hostile work environment claim against an employer, a plaintiff must prove the following:  (1) the employee suffered intentional discrimination because of their [race];

---

[6] Because I have dismissed Plaintiff's retaliation claim for failure to allege protected activity, I need not address MCB's additional argument with respect to adverse action or timeliness.  I do note that, should Plaintiff replead his retaliation claim to allege protected activity, Plaintiff has made numerous allegations that would be considered materially adverse, including his failure to receive compensation and benefits, his exclusion from senior management meetings, unfair performance evaluations and his ultimate termination from employment.

(2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected

the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same

[race] in that position; and (5) the existence of *respondeat superior* liability." Huston v. Proctor

& Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).   "To state a hostile work

environment claim, a plaintiff must plausibly allege that [his] 'workplace was permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment.'" Burgess-

Walls v. Brown, 2011 WL 3702458, at *9 (E.D. Pa. Aug. 22, 2011) (quoting Brooks v. CBS

Radio, Inc., 342 Fed. Appx. 771, 776-77 (3d Cir. 2009)).   Acts of harassment need not be

accompanied by racially discriminatory statements; "all that is required is a showing that race is

a substantial factor in the harassment, and that if the plaintiff had been white [he] would not have

been treated in the same manner."  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d

Cir. 1996).   Courts in the Third Circuit have been reluctant to dismiss a complaint at the

12(b)(6) stage when the primary challenge is whether or not the conduct in question is severe or

pervasive, on the grounds that "the determination of what constitutes 'severe or pervasive' does

not lend itself to a mathematically precise test, but instead requires a court to look to the totality

of the circumstances," a necessarily fact-intensive analysis more suitable to summary judgment.

Grasty v. World Flavors, Inc., 2011 WL 3515864, at *9 n.2 (E.D. Pa. Aug. 11, 2011) (citations

omitted).

　　　　While Plaintiff has alleged overtly racist remarks only on the part of Bolt, Plaintiff has

also alleged a pattern of hostile conduct, including Crites' support of Bolt when Plaintiff

complained of  Bolt's use of racist terminology and having screamed at Plaintiff (Complaint,

¶36); exclusion from senior management meetings (id. at ¶¶ 57, 59); a draft performance review falsely claiming Plaintiff had not met his loan portfolio growth targets (id. at ¶58); Crites taking over Plaintiff's responsibilities with respect to the Minutes, objecting to Plaintiff's loan approval requests, and harassing Plaintiff about legal, accounting and lending matters (id. at ¶60); requiring Plaintiff to submit loan approval requests to Crites before submitting them to the Directors Loan Committee members (id. at ¶67); giving Plaintiff a small office and a junior female employee a larger office (id. at ¶73); eliminating his loan approval responsibilities (id. at ¶82); refused Plaintiff assistance in addressing problem loans (id. at ¶83); falsely accused Plaintiff of being responsible for problems with guarantee documentation (id. at ¶ 87); falsely accusing Plaintiff of not meeting his loan growth targets (id. at ¶89); accusing Plaintiff of being the cause of the FDIC downgrade (id. at ¶91); and giving Plaintiff a falsely negative evaluation in 2009 (id. at ¶95).  Plaintiff further alleges that white and female employees were not subject to the same treatment, and that, as a result of the hostile environment, he experienced chest pains and numbness in his arm while at work, resulting in a stress induced pinched nerve. (Id. at ¶98.)

These factual allegations, which relate numerous instances of Plaintiff being falsely accused of wrongdoing, berated, excluded from meetings, and relieved of his responsibilities, resulting in significant job-related stress, are sufficient at this stage of the proceedings to state a claim for hostile work environment.  Accordingly, MCB's motion to dismiss this claim is denied.

### 4.  Age Discrimination

Plaintiff also claims to have alleged age discrimination under the ADEA.  The Complaint does not cite to the relevant statute or specifically refer to such a claim.  Not disputing the existence of such a claim, MCB merely argues that it cannot be held liable under the ADEA

because it had fewer than 20 employees.  (Docket No. 36, at 7-8.)  Because Plaintiff has failed to

allege the number of employees in his Complaint, I will dismiss this claim without prejudice.[7]

### B.  Count II – Breach of Employment Agreement

Plaintiff alleges that MCB breached its employment agreement with Plaintiff by failing to

provide him with Senior Management Stock Options, a retirement plan, and regular and

appropriate bonus payments and raises.  (Complaint, ¶¶ 25, 56.)  MCB also breached the policies

set forth in its Employee Handbook, which entitled Plaintiff to receive annual performance

reviews and designated benefits, and assured employees that MCB would not tolerate

discrimination or harassment, and prohibited retaliation for notifying the bank of a breach of

bank policies.  (Id. at ¶¶29, 53, 57-58.)

As discussed in more detail above, Plaintiff on two occasions signed an

acknowledgement that he was an at-will employee, that the Employee Handbook was not a

contract and did not create any contractual obligations on the part of MCB, and that MCB

retained the right to modify, supplement or discontinue any benefits, policies or procedures with

or without notice or reason.  While "internal personnel rules can be construed as an implied

contract, if there is evidence that the employer intended to be bound by the requirements set forth

in those rules, . . .[c]ourts sitting in the Virgin Islands have held that, where an employer reserves

to itself the absolute discretion to modify, amend or alter the rules without any input whatsoever

from the employee, the employer's personnel policies are not intended to constitute an

employment contract." Fraser v. Kmart Corp., 2009 WL 1124953, at *14 (D.V.I. Apr. 24, 2009);

---

[7] In support of its alternative motion for summary judgment, Defendant has submitted an affidavit demonstrating that it had fewer than twenty employees at the relevant time.  Plaintiff has disputed the accuracy of this statement, and indeed, Defendant has noted that Plaintiff was correct with respect to one additional employee.  Even were I inclined to resolve this on summary judgment at this stage of the proceedings, this disparity would raise an question of fact entitling Plaintiff to discovery on this issue.

see also, Greene v. Virgin Islands Water and Power Auth., 2011 WL 3032466, at *12 (D.V.I. July 22, 2011) (dismissing breach of contract claim where employee manual states that it is not a contract and gives the employer full power to unilaterally suspend or eliminate certain procedures).[8]  Similarly, given Plaintiff's repeated acknowledgment in writing that he had "no express or implied employment contract with the Bank," he may not now argue that the language of the Offer Letter constitutes a contract of employment.

Given the express disclaimers in the Employee Handbook and Plaintiff's repeated written acknowledgement that he did not have an employment contract with MCB, permitting amendment of the Complaint on this issue would be futile.  Accordingly, Plaintiff's breach of contract claim is dismissed with prejudice.

### C.  Count III – Breach of Duty of Good Faith and Fair Dealing

Absent a contractual relationship between Plaintiff and MCB, Plaintiff may not allege a claim for breach of the duty of good faith and fair dealing.  See Fraser, 2009 WL 1124953, at *15 (dismissing claim for breach of implied covenant of good faith and fair dealing where employee handbooks did not create contractual relationship); Greene, 2011 WL 3032466, at *12 ("Since no contract existed, any discussion of the duty of good faith and fair dealing is a blind alley.")  Accordingly, amendment on this issue would be futile and I dismiss Count III of the Complaint with prejudice.

---

[8] By contrast, in Lake v. Trinity Svc. Group, Inc., No. 1:05-cv-00158-LDD, ECF Doc. 157, at 25 (D.V.I. Feb. 9, 2011), relied upon by Plaintiff, the disclaimer at issue was not signed by the plaintiff (twice), did not disavow the existence of a contractual relationship and did not expressly reserve to the defendant the right to unilaterally alter the provisions of the employee handbook.

### D.  Count IV – Breach of Whistleblower Agreement

In Count IV, Plaintiff alleges that MCB breached its Whistleblower Policy.  (Complaint, ¶¶38, 125.)  It is unclear from the Complaint whether such a policy was set forth in the Employee Handbook or whether it was separately issued by MCB.  While I have already held that the policies set forth in the Employee Handbook cannot support a breach of contract claim, to the extent the Whistleblower Policy derives from another source, it may create an implied contract.  Accordingly, MCB's motion to dismiss Count IV of the Complaint is denied.  Further, should Plaintiff demonstrate an implied contract relating to the Whistleblower Policy, he would be entitled to assert a claim for breach of the duty of good faith and fair dealing with respect to that policy.

### E.  Count V – Defamation Per se

To state a claim for defamation under Virgin Islands law, a plaintiff must plead:  "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of 'special harm' or the existence of 'special harm' caused by the publication."  <u>Illaraza v. HOVENSA LLC</u>, 2010 WL 2342424, at *4 (D.V.I. June 7, 2010).   In order to survive a motion to dismiss, the Plaintiff must also provide "some details about the asserted defamatory statements, including the names of the publisher and the person or persons to whom it was published, dates when the statements were made and the specific content of the defamatory statements."  <u>Id.</u> at *3 (discussing case law).

Plaintiff has clarified that his defamation claim relates to (1) Crites' draft 2007 performance review; (2) Crites' 2009 performance review of Plaintiff; (3) the February 2010

termination letter; (4) Bolt's critiques and attacks of Plaintiff at Board meetings; and (5) a September 2009 email from Bolt to Crites blaming Plaintiff for the problems with the guarantees on JFOV loan.  (Docket No. 62, at 8-9.)

As an initial matter, the Complaint does not allege that any of these statements were published by the Director Defendants or by Williams.  Accordingly, Plaintiff's claim for defamation is dismissed with respect to those Defendants.  With respect to Crites' 2007 draft performance review and 2009 performance evaluation, Plaintiff has acknowledged that the Complaint does not allege that these documents were published to anyone other than Plaintiff.  (Docket No. 62, at 8 n.5.)  While Plaintiff argues that I should infer from the nature of the documents that they were published to the Board of Directors, Plaintiff has not given me any basis for so inferring.  For instance, Plaintiff has not alleged that the Board of Directors was responsible for determining his compensation.  Nor has Plaintiff alleged that performance review (or draft performance reviews that were never finalized) were routinely shared with the Board of Directors.  Accordingly, Plaintiff's defamation claim is dismissed without prejudice to repleading to the extent it relates to his performance reviews.  Similarly, Plaintiff's defamation claim with respect to the termination letter must be dismissed because Plaintiff has not alleged that the termination letter was published to anyone but himself.[9]

Plaintiff's defamation claim against Bolt and BoltNagi is equally infirm.  Plaintiff fails to identify the specific content of the statements made by Bolt to the Board of Directors and the dates when the allegedly defamatory statements were made.  The purported September 2009

---

[9] Defendants argue that statements in the performance reviews and termination letter are privileged as a matter of law and cannot support a defamation claim.  While I need not address this issue at this time, I note that such statements are subject only to a conditional privilege, which may not be resolved at the motion to dismiss stage.  See VECC, Inc. v. Bank of Nova Scotia, 296 F. Supp.2d 617, 624 (D.V.I. 2003) (denying motion to dismiss based on conditional privilege where issues remained as to whether Defendant abused its privilege).

email from Bolt to Crites is not even mentioned in the Complaint.  Accordingly, Plaintiff's

defamation claim against Bolt and Bolt/Nagi is dismissed without prejudice.

### F.  Count VI – Tortious Interference with Perspective (sic) Contractual Agreements

Plaintiff has clarified that this claim alleges that individual Defendants interfered with his

contractual relationship with his employer, MCB.  (Docket No. 62, at 10.)  To state a claim for

tortious interference with contractual relations under Virgin Islands law, a plaintiff must plead:

(1) a contractual relationship between plaintiff and a third party; (2) the defendant knew about

the contract; (3) the defendant intentionally and improperly interfered with the contract; (4) the

interference was the proximate cause of one party to the contract failing to perform; (5) the

defendant intended to harm the plaintiff by interfering with the contract; and (6) the non-

performance resulted in harm to the plaintiff.  See Gov't Guar. Fund of Rep. of Finland

(Skopbank) v. Hyatt Corp., 955 F. Supp. 441, 452 (D.V.I. 1997).

As an initial matter, Count VI is dismissed with prejudice as against MCB, since as a

matter of law, MCB cannot tortiously interfere with its own contract.  As I previously held, the

only potentially viable contract alleged between Plaintiff and MCB involves the Whistleblower

Policy.  In the context of this limited scope, the Court finds that the Complaint does not clearly

allege claims against the various individual Defendants relating to the Whistleblower Policy.

Accordingly, I dismiss Count VI of the Complaint with leave to replead as against the Officer,

Attorney and Director Defendants.

### G.  Count VII – Civil Rights Act of the U.S. Virgin Islands

Plaintiff concedes that, at this time, there is no private right of action under Chapter 5 of

Title 10 or Chapter 17 of Title 24 of the Virgin Islands Civil Rights Acts.  (Docket No. 62, at 15

18

n.8.)  Accordingly, to the extent this claim relates to those provisions, it is dismissed with prejudice.

However, in his opposition, Plaintiff further relies on Chapter 1 of Title 10, which provides that:

> No person, being the owner, proprietor, superintendent, manager, agent or employee of any publicly licensed business or any other business or industrial establishment, shall directly, indirectly or by subterfuge, deny employment in or at such business to any applicant therefor, or engage in or permit any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color or national origin, subject only to the conditions and limitations established by law and applicable in like manner to all persons.

10 V.I.C. §3(b).  In his Complaint, he alleges that he was treated differently than "[f]emale, white and younger employees," that he was the only male employee at the Bank other than Crites during most of the time of the alleged discrimination, and that "[w]hite, female or younger employees were given more favorable treatment, were not discharged as Plaintiff was, were given disparate pay increases and bonus compensation, and disparate distribution of flexible work arrangements."  (Complaint, ¶¶ 3, 15, 16.)

Apart from these general allegations of differential treatment (some of which, like age and gender, are not covered by the statute), the Complaint contains no specific factual allegations demonstrating that the Board of Director Defendants or the Officer Defendants engaged in or permitted discrimination on the basis of race, creed, color or national origin.  The factual allegations against these Defendants relate only to improper loans and insider dealing, not discrimination.  While Plaintiff does allege that Bolt referred to him as "boy," Plaintiff does not allege that Bolt or his firm were in any manner involved in decisions regarding Plaintiff's compensation, reviews or ultimate termination.  Because Plaintiff has failed to plead factual

19

allegations to support his conclusory claim under the Virgin Islands Civil Rights statute, I grant Defendants' motion to dismiss without prejudice.

### H.  Count VIII – Breach of Fiduciary Duty to Shareholder

Plaintiff alleges that "[t]he Defendants have violated 13 V.I.C. §72 *et seq.* and has (sic) breached its fiduciary duty to its shareholders."  Section 72 of Title 13 states that "if the directors or officers of any corporation organized under this chapter shall knowingly cause to be published or give out any written statement or report of the condition or business of the corporation that is false in any material respect, the officers or directors causing such report or statement to be published, or given out, or assenting thereto, shall be jointly and severally liable for any loss or damage resulting therefrom."  Plaintiff stipulates that he has not alleged that any officer or director published any written statement or report that misrepresented the financial condition of MCB.  (Docket No. 62, at 17 n.10.)  Accordingly, to the extent Count VIII is based on 13 V.I.C. § 72, I grant the Officer and Director Defendants' motions to dismiss Count VIII of the Complaint.[10]

Plaintiff further argues that Count VIII states a common law claim for breach of fiduciary duty.  Under common law, "the shareholder's suit for breach of fiduciary duty is a derivative suit; the shareholder's right to bring suit is derived from the corporation's right to bring suit."  Green v. Fund Asset Mngt., L.P., 245 F.3d 214, 227 n.16 (3d Cir. 2001).  I will address Plaintiff's common law shareholder derivative claim in my discussion of Count IX below.

---

[10] Plaintiff requests that this statutory claim be dismissed without prejudice in the event that discovery reveals the existence of such a writing.  While Plaintiff has failed to plead a legally cognizable claim at this time, he may later seek leave to amend pursuant to Federal Rule of Civil Procedure 15.

### I. Count IX – Shareholder Derivative Action

Plaintiff concedes that Rule 23.1 governs the technical pleading requirements for shareholder derivative claims.  (Docket No. 62, at 20.)  Rule 23.1 requires that a complaint alleging a shareholder derivative claim be verified, and must "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  Fed.R.Civ.P. 23.1(b) (West 2011).

Plaintiff's Complaint is not verified and does not allege that Plaintiff made a demand on the Board of Directors or that such a demand would have been futile.  Plaintiff argues that the demand requirement is satisfied by the allegation that he wrote to the Audit Committee in August 2009 "expressing his concerns about improper loans and other items, but the committee ignored Plaintiff's pleas for assistance."  (Docket No. 62, at 20.)   The Complaint actually alleges that "[i]n August 2009, Plaintiff wrote to the Audit Committee expressing his concerns about improper loans, a lack of support from Crites, and that Crites was creating a hostile work environment."  (Complaint, ¶ 84.)

This bare allegation is insufficient to meet Plaintiff's statutory requirements.  "The demand itself must be more than pro forma; the plaintiff must make a serious request upon the board and specify the nature of the activity in question."  Smachlo v. Birkelo, 576 F. Supp. 1439, 1443 (D. Del. 1983).  As the Supreme Court explained:

> [b]efore a shareholder is permitted in his own name, to initiate and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain within the corporation itself, the redress of his grievances, or action in conformity to his wishes. *He must make an earnest, not a simulated effort, with*

> *the managing body of the corporation, to induce remedial action on their part*,
> and this must be made apparent to the Court.

Id. at 1443-44 (emphasis in original)(quoting Hawes v. Oakland, 104 U.S. 450, 460-61 (1882)). Plaintiff has failed to allege any factual details which would demonstrate that his purported demand on the Board identified the nature of the activity of which he complained and requested that the Board take action with respect to this activity.

Nor has Plaintiff alleged that demand upon the Board would have been futile.  Plaintiff argues that "the Court should excuse Plaintiff from making a demand on the [Board] for the relief he seeks because the Individual Defendants collectively control MCB's [Board]."  (Docket No. 62, at 20.)  While this allegation does not appear in the Complaint and thus cannot be considered in connection with the current motion to dismiss, even if it were pleaded, it would be inadequate to establish demand futility.  First, Plaintiff has failed to plead any factual allegations regarding the composition of the Board or that the Director or Officer Defendants constitute a majority of the Board.  See  Allison v. General Motors Corp., 604 F. Supp. 1106, 1114 (D. Del.) (noting that the "Court will not presume or infer this crucial fact"), aff'd, 782 F.2d 1026 (3d Cir. 1985).  Further, "unless a plaintiff makes sufficiently particular allegations of participation, self-dealing, bias, bad faith, or corrupt motive, failure to make a demand will not be excused."  Id. (citing Lewis v. Curtis, 671 F.2d 779, 784-85 (3d Cir.), cert. denied, 459 U.S. 880 (1982)).

Because Plaintiff has failed to plead either that he made a proper demand on the Board or that such a demand would have been futile, Plaintiff's shareholder derivative claims alleged in Counts VIII and IX are dismissed without prejudice.

**J.  Count X – Violation of COBRA**

MCB argues that, during the relevant time period, it had fewer than twenty employees, and so was not subject to the requirements of COBRA.  For the same reasons that I dismissed Plaintiff's ADEA claim, I dismiss Plaintiff's COBRA claim without prejudice.

**K.  Count XI – Violation of U.S. and Virgin Island Whistleblower Laws**

In Count XI, Plaintiff alleges claims under "the Virgin Islands and U.S. Whistleblower laws."  Plaintiff acknowledges that his claim under the Virgin Islands Whistleblower Protection Act ("WPA") is barred by the ninety-day statute of limitations.  (Docket No. 62, at 24.)  However, he argues that he still has a viable "common law cause of action for a wrongful discharge of an at-will employee in violation of a clear expression of public policy" and that he has adequately pleaded a claim under Federal law.

Defendants argue that no common law claim for wrongful discharge exists under Virgin Islands law.  Defendants are correct.  See Sprauve v. CBI Acquisitions, LLC, 2010 WL 3463308, at *11 (D.V.I. Sept. 2, 2010)("Absent the applicability of the WDA, there is no common law cause of action for wrongful discharge Plaintiff may claim."); Smith v. V.I. Water and Power Auth., 2008 WL 5071685, at *9 (D.V.I. Nov. 24, 2008) ("This court has recently held that where a plaintiff is unable to state a claim for wrongful discharge under the WDA, no common law action based on public policy exists.")  Accordingly, I dismiss Plaintiff's statutory and common law claim for wrongful discharge under Virgin Islands law with prejudice.

Plaintiff has also alleged a claim under Federal law, which he has now identified as arising under 12 U.S.C. §1831(j)(a).[11]  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, provides that:

> No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal banking agency or to the Attorney General regarding (A) a possible violation of any law or regulation; or (B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety; by the depository institution or any director, officer, or employee of the institution.

12 U.S.C. §1831(j)(a).

The Officer and Director Defendants argue that they may not be held individually liable under that statute. (Docket No. 76, at 13.)  The Third Circuit has recognized that 12 U.S.C. §1831(j) does not permit individual damages liability on the part of employees, and that District and Circuit courts have held that the statute "applies only to the actors named in the  statute, the only actors being certain types of *institutions*." Fasano v. Federal Reserve Bank of N.Y., 457 F.3d 274, 289 (3d Cir. 2006) (emphasis in original), cert. denied, 549 U.S. 1115 (2007).  Plaintiff has failed to cite any authority demonstrating that the officers or directors of a depository institution may be liable under the statute, let alone the institution's attorney or law firm. Accordingly, I grant the Officer, Director and Attorney Defendants' motion to dismiss Count XI of the Complaint.

MCB argues that Count XI should be dismissed against it because the Complaint does not identify the specific statute.  (Docket No. 36, at 19.)  In its reply, MCB chose to make no additional arguments with respect to this claim.  Plaintiff has alleged that he reported the

---

[11] Because all Defendants have been provided the opportunity to reply on this issue, I will not grant dismissal of the claim due to Plaintiff's failure to identify the statute at issue.

24

improper loans to the FDIC in December 2009 and that he was subsequently blamed for MCB's downgrade.  (Complaint, ¶¶ 90 *et seq*.)  Accordingly, I will deny MCB's motion to dismiss Count XI of the Complaint as against it.

### L.  Count XII – Punitive Damages

Plaintiff concedes that he may not assert a separate claim for punitive damages under Virgin Islands law.  (Docket No. 62, at 26.)  Accordingly, I grant Defendants' motion to dismiss Count XII of the Complaint without prejudice to his right to seek punitive damages for any other appropriate and viable claims.

### Conclusion

Based on the foregoing, MCB's motion for summary judgment is DENIED.  Defendants' motions to dismiss are GRANTED IN PART, and DENIED IN PART as detailed above and in the accompanying ORDER.

Dated:  October 13, 2011

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Judge

# ORDER

Having carefully considered Defendants' motions to dismiss, or alternatively, for summary judgment [Docket Nos.29-30, 32-33, 35-37, 40-41, 57-58], Plaintiff's opposition thereto [Docket Nos. 60, 62-63, 81], and Defendants' replies [Docket Nos. 72, 76-79, 90], it is hereby ORDERED that,

(1) MCB's motion for summary judgment is DENIED without prejudice to refiling after the close of discovery;

(2) MCB's motion to dismiss Count I of the Complaint is GRANTED with respect to Plaintiff's Title VII retaliation claim and ADEA claim; DENIED with respect to Plaintiff's racial and gender discrimination claims under Title VII and section 1981 and hostile work environment claim;

(3) MCB's motion to dismiss Count II of the Complaint is GRANTED with prejudice;

(4) MCB's motion to dismiss Count III of the Complaint is GRANTED with prejudice;

(5) MCB's motion to dismiss Count IV of the Complaint is DENIED;

(6) Defendants' motion to dismiss Count V of the Complaint is GRANTED;

(7) Defendants' motion to dismiss Count VI of the Complaint is GRANTED;

(8) Defendants' motion to dismiss Count VII of the Complaint is GRANTED;

(9) Defendants' motion to dismiss Count VIII of the Complaint is GRANTED;

(10) Defendants' motion to dismiss Count IX of the Complaint is GRANTED;

(11) MCB's motion to dismiss Count X of the Complaint is GRANTED;

(12) Defendants' motion to dismiss Count XI of the Complaint is GRANTED with respect to the Officer, Director and Attorney Defendants, and DENIED with respect to MCB;

(13) Defendants' motion to dismiss Count XII of the Complaint is GRANTED; and

(14) Plaintiff is GRANTED leave to file an Amended Complaint by October 28, 2011 to replead Count I's claim for Title VII retaliation and age discrimination under the ADEA; Count III of the Complaint with respect to the Whistleblower Agreement only; Count V; Count VI as against the Officer, Attorney and Director Defendants; Plaintiff's shareholder derivative claims in Counts VIII and Count IX; and Count X;

(15)  A case management conference will be held by telephone on November 3, 2011 at 9:30 a.m.  Plaintiff shall initiate the call.

Dated:  October 13, 2011

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Judge