IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS

| | |
|---|---|
| JIMMY BETHEA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.  11-51 |
| | ) |
| MERCHANTS COMMERCIAL BANK, et al., | ) |
| | ) |
| Defendants. | ) |

AMBROSE, U.S. Senior District Judge

**OPINION**

**AND**

**ORDER**

Pending before me is a *Daubert* Motion to Exclude Proposed Testimony of Richard Moore brought by Defendants Merchants Commercial Bank ("MCB"), James E. Crites, William B. Cashion, I. Steven Simon, J. David McCay, and Michael B. Burgamy (collectively "Defendants"). ECF No. [600]. Defendants filed a brief in support of their motion, ECF No. [601]. Plaintiff Jimmy Bethea filed a brief in opposition, ECF No. [605], to which Defendants replied at ECF No. [615]. When I set the briefing schedule for Defendants' *Daubert* motions, both sides indicated that a hearing on the motions was not necessary and that I could decide the *Daubert* motions based solely on the parties' briefs. ECF No. [556]. However, within his brief, Plaintiff requests a hearing. Accordingly, a *Daubert* hearing was held on June 26, 2014 via video conference. The day before the hearing, Plaintiff filed a notice proffering that Dr. Moore

1

would present no direct testimony on mitigating income or discounting to present value as to future loss of income.  ECF No. [666].

I. Applicable Legal Standards

A. Federal Rules of Civil Procedure 26 and 37 and the *Pennypack* Factors

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that expert reports must contain "a complete statement of all opinions the witness will express and the basis and the reasons for them."  Under Rule 26, parties must make such disclosures "at the times and in the sequence that the court orders."  Fed. R. Civ. Pro. 26(a)(2)(D).  If a party has expert evidence that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26[], the party must disclose such evidence "within 30 days after the other party's disclosure."  Fed. R. Civ. Pro. 26(a)(2)(D)(ii).  A party has a duty to supplement its disclosures "in a timely manner if [it] learns that in some material respect [a] disclosure or response is incomplete or incorrect . . . ."  Fed. R. Civ. Pro. 26(e)(1)(A).  "However, parties may not use their obligation to supplement as an excuse to violate the clear terms of a Scheduling Order, unilaterally buying themselves additional time to make disclosures, thereby unduly prejudicing other parties and potentially delaying the progress of a case."  *Abbott Lab. v. Lupin Ltd.*, Civ. Action No. 09-152-LPS, 2011 WL 1897322, at *3 (D. Del. May 19, 2011).

Pursuant to Federal Rule of Civil Procedure Rule 37, "[t]he Court has broad discretion in imposing sanctions."  *Jarvis v. Premuda*, Civ. No. 2005/0077, 2007 WL 4969426, at *1 (D.V.I. July 18, 2007) (internal citation omitted).  In *Meyers v. Pennypack Woods Home Ownership Ass'n*, the Third Circuit instructed courts to weigh the following factors when considering exclusion of evidence:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which [allowing the testimony and/or evidence] would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the excluded evidence.

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (citing *Pennypack* and evaluating the district court's use of discretion in refusing to allow a party to submit additional evidence once the discovery deadline had passed); *see also Jerome v. Watersports Adventure Rentals and Equipment, Inc.*, Civ. Action No. 2009-092, 2013 WL 3663059, at *4-10 (D.V.I. July 11, 2013) (evaluating the admissibility of two expert reports submitted after the disclosure deadline).  "The importance of the evidence is often the most significant factor" to be weighed. *ZF Meritor*, 696 F.3d at 254.

### B. Federal Rules of Evidence 401 and 403

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  In turn, relevant evidence will be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  "Rule 403 authorizes a district court in its broad discretion to exclude collateral matters that are likely to confuse the issues." *United States v. Casoni*, 950 F.2d 893, 919 (3d Cir. 1991).  The inquiries under Rules 401 and 403 are fact-intensive, and context-specific. *Sprint v. Mendelsohn*, 552 U.S. 379, 388 (2008).

### C. *Daubert* and Federal Rules of Evidence 702

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that:

> [f]aced with a proffer of expert scientific testimony, . . . the trial court judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

509 U.S. at 592-93. More recently, in *Kumho Tire Co.*, *Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court clarified any confusion regarding the intended reach of the *Daubert* decision, by declaring that the trial judge must perform this "basic gatekeeping obligation" to *all* expert matters, not just "scientific" matters. In the Third Circuit, the trial court's role as a "gatekeeper" announced in *Daubert* requires proof that: (1) the proffered witness is qualified as an expert; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must "fit" the facts of the case. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994). Thus, pursuant to *Daubert*, the gatekeeping function requires the court to ensure that the expert testimony is both reliable and relevant. *Daubert*, 509 U.S. at 589; *Kumho Tire Co.*, 526 U.S. at 147.

As to the first requirement—qualification—the Court of Appeals for the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more general qualifications." *Paoli*, 35 F.3d at 741. "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." *Id.* Thus, an expert can qualify based on a broad range of knowledge, skills, training and experience.

The second inquiry focuses on methodology. The inquiry into methodology is designed to ensure that an expert's opinions are based upon "'methods and procedures of science' rather than on subjective belief or unsupported speculation; the expert must have 'good grounds' for his or her belief." *Id.* at 742. Factors used to assess reliability may include whether: (1) the theory or technique can be tested; (2) the theory or technique has been peer reviewed; (3) there is a high rate of known or potential error; (4) there are standards or controls; (5) the theory is "generally accepted"; (6) there is a sufficient relationship between the technique and methods which have been established to be reliable; (7) the expert's qualifications are sufficient; and (8) the method has been put to non-judicial uses. *See Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 594 (D.N.J. 2002), *aff'd*, 68 Fed. Appx. 356 (3d Cir. 2003). "Some courts also consider additional factors relevant in determining reliability, including: (i) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation . . .; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion . . .; (iii) whether the expert has adequately accounted for alternative explanations . . .; (iv) whether the expert is being as careful as he would be in his professional work outside of the litigation context . . .; and (v) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert . . . ." *Id.* at 594-95 (citations omitted); *see also Cuffari v. S-B Power Tool Co.*, 80 Fed. Appx. 749, 751 (3d Cir. 2003) ("In short, trial courts should determine whether the expert's conclusion is based on valid reasoning and reliable methodology.").

Although this list of factors is lengthy, not each factor will be relevant to every reliability analysis. The "test of reliability is 'flexible.'" *Kumho*, 526 U.S. at 141. According to the Supreme Court, "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to

all experts." *Id.* The relevance of the *Daubert* factors depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (internal quotation marks and citations omitted).

Finally, *Daubert* and Rule 702 require that the expert's testimony "fit" the facts of the case. "'Fit' requires that the proffered testimony must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." *Magistrini*, 180 F. Supp. 2d at 595 (citing *Paoli*, 35 F.3d at 743).

With these standards in mind, and after careful consideration of the written submissions of the parties and the testimony presented at the *Daubert* hearing, Defendants' *Daubert* motion at ECF No. 600 is granted in part and denied in part, as explained *infra*.

## II. Defendants' Motion

Plaintiff offers Dr. Richard Moore ("Moore") as an economic expert to assist the jury in calculating Plaintiff's damages. Pl.'s Br. 1. Defendants ask me to exclude Moore's evidence in its entirety. Def.'s Br. 2.

Moore has issued three different reports for this case: 1) the initial report, dated May 17, 2013 ("Report 1"), served on defendants on May 20, 2013, 2) a Supplemental Report, dated August 13, 2013 ("Report 2"), served on August 14, 2013, and 3) a Corrected Supplemental Report, dated August 13, 2013 ("Report 3"), served on August 15, 2013—the same day as Moore's deposition, which had been rescheduled at Plaintiff's request. Def.'s Br. 2 & 6. My Scheduling Order required Plaintiff to provide his experts' opinions to Defendants by April 30, 2013, ECF No. 421, and I granted Plaintiff's request to extend the deadline to May 21, 2013. ECF No. 499. Defendants ask me to exclude Moore's testimony because (i) Moore's expert reports were untimely per Fed. R. Civ. Pro. 26(a)(2)(D)(ii), (ii) Moore's second and third reports

use a different methodology for valuing stock option awards (the Black-Scholes option)—the same methodology used by Defendants' expert, and (iii) Moore's opinions "lack foundation and do not fit the facts of this case." *Id.* at 2.

Defendants first argue that Moore's testimony should be excluded because his expert reports were untimely.  Defendants argue they were prejudiced because they expended time preparing for Moore's deposition using his first report.  *Id.* at 6.  Defendants further insinuate that the supplemental reports were issued in bad faith, alleging that "Plaintiff staged the delay in Moore's deposition . . . in order to enable Moore the opportunity to rewrite his First Report." *Id.* at 6-7.

Applying the *Pennypack* factors here, I will not exclude Moore's reports or testimony due to untimeliness.  While I find that the timing of Moore's disclosure of his supplemental reports—the day before and the day of his rescheduled deposition—prejudiced Defendants, I do not find evidence of bad faith where Plaintiff's expert seemingly issued supplemental reports to correct mathematical errors and alleged deficiencies identified by Defendants' expert.  Pl.'s Br. 15; Moore Dep. 36:13-16 (explaining that, upon digesting Defendants' experts' report, he "learn[ed] things . . . that [he] thought would be appropriate to consider, just to be clear, [and to] make it easier for the jury to understand . . . ."); 36:17-24; 37:13-19.  However, I join the *Jerome* court and caution Plaintiff and Moore that successive iterations of expert reports *should not be the norm.  See Jerome v. Watersports Adventure Rentals and Equipment, Inc.*, Civ. Action No. 2009-092, 2013 WL 3663059, at *8 (D.V.I. July 11, 2013) (issuing admonishment but finding no bad faith when the same expert as the one challenged here produced successive expert reports in violation of the court's scheduling order).  Additionally, because Defendants continued with the rescheduled deposition and did not seek leave of court to continue, bifurcate, or again reschedule

the deposition, and Defendants have not made such a request in the approximately five months between Moore's deposition and the filing of the present motion, I find that Defendants had sufficient ability and opportunity to cure the prejudice.

Moreover, the overall balance of the *Pennypack* factors weighs against exclusion of Moore's testimony. *See Wyeth Holdings Corp v. Sandoz, Inc.*, Civ. Action No. 09-955-RGA-CJB, 2012 WL 1669555, at *4-5 (D. Del. May 10, 2012) (stating that the "bad faith" factor of the *Pennypack* analysis is not dispositive and instructing courts to consider "the overall balance" of factors). There is no disruption to the orderly and efficient trial of this case as no trial date has yet been set. Because the exclusion of an expert is an extreme sanction and "when presenting damage calculations to a jury, mathematical accuracy is important," careful consideration of all of the *Pennypack* factors weighs against exclusion of Moore's testimony. *Jerome*, 2013 WL 3663059, at *9 (finding the 'importance of the evidence' *Pennypack* factor weighed in favor of exclusion where the doctors and records relied upon would be available at trial).

Entwined with their timeliness argument, Defendants argue that Moore's testimony should be excluded because he changes methodologies with regard to valuation of stock in the third iteration of his report. Def.'s Br. 4. At the June 26, 2014 video conference, Plaintiff withdrew Dr. Moore's opinion as to the valuation of future stock options; accordingly, this issue is moot.

Additionally, Defendants argue that Moore's testimony must be excluded because his testimony does not fit the facts of the case or my previous rulings. Def.'s Br. 7. "[A]lthough mathematical exactness is not required, expert testimony . . . must be based upon the proper factual foundation." *Jerome*, 2013 WL 3663059, at *10 (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000)) (internal citation and alterations omitted). "In other words, an

8

'expert's testimony . . . must be accompanied by a sufficient factual foundation before it can be submitted to the jury.'" *Id.* (quoting *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983) and citing Fed. R. Evid. 702(b) which requires expert opinion testimony to be "based on sufficient facts or data").

First, Defendants submit that in calculating Mr. Bethea's back pay, Moore cannot assume that Mr. Bethea's salary would have continued to grow at the same rate as it did during the time frame of 2006-2009[1] because Mr. Bethea's alleged comparators (James Crites and Anette Williams)[2] did not receive any salary increases in the ensuing years. Def.'s Br. 8. Defendants also object to Moore's calculations of loss of bonus income. *Id.* at 10. Defendants further submit that Moore should be barred from testifying about calculations that presume all benefits of Mr. Bethea's offer letter from MCB because I dismissed Plaintiff's breach of contract claim with prejudice. *Id.* at 7-8.

I consider Defendants' objections to Moore's calculations of Mr. Bethea's annual salary and bonus growth an attack on Moore's methodology. While I do not find Moore's methodology perfect, I do find it reliable enough to satisfy the *Daubert* standards. See, e.g., Moore Dep. 51-53. Moore's expert opinion is not completely devoid of any factual basis, and it does not solely rely on Mr. Bethea's own experiences. See Moore Dep. 55:2-11; 56:1-5. Defendants may challenge this on cross-examination.

However, I agree with Defendants that Moore's calculations of back pay that presume all benefits of his offer letter are too speculative and do not fit the facts of this case. Def.'s Br. 11-12 & n.19. Moore is prohibited from stating an opinion on back pay that includes benefits that

---

[1] Defendants also dispute that Mr. Bethea received annual salary increases during 2006-2009. Def.'s Br. at 9, n.13.
[2] In their pending motion for summary judgment, Defendants argue that these persons are not similarly situated and, therefore, do not qualify as comparators as a matter of law.

were not given to Mr. Bethea at the time of his employment, including stock options, 401K, disability, and pension benefits. *See Elcock*, 233 F.3d at 754 (finding expert's opinion cannot be based on a "flawed assumption"); Moore Report 3, ECF No. 601-3, at 9.

Defendants also take issue with Moore's front pay calculations for the same reasons they objected to his back pay calculations: (i) that the amount is in excess of any potential MCB comparator, and (ii) because the calculations are based on the assumption that Mr. Bethea would receive all the benefits of his offer of employment letter. Def.'s Br. 13. Defendants further object to Moore's increased calculation in Mr. Bethea's work-life expectancy—up two years, from his first to his third expert report, Def.'s Br. 13, and Moore's methodology for calculating future losses, arguing that (i) Moore is not a vocational expert, and (ii) that he impermissibly relies chiefly on Mr. Bethea's opinion. Def.'s Br. 14-19.

For the reasons explained *supra*, Defendants' concerns about Moore failing to use MCB comparators in his calculations go to weight, and Defendants may challenge this on cross-examination. Similarly, Defendants may address their concerns about Moore's change in his opinion of Mr. Bethea's work-life expectancy, as reflected in his third report, on cross-examination.

Additionally, it would be improper to allow Moore to testify to damages that are based on assumptions not supported by the record. Therefore, because Moore is prohibited from including in his opinion on back pay consideration of benefits offered but never given to Mr. Bethea, Moore may not state an opinion on future losses using a base compensation that includes such benefits nor may he factor in the same when opining on the value of Mr. Bethea's loss of future compensation. *See Elcock*, 233 F.3d at 754 (stating expert testimony must have "sufficient factual foundation"); *see also Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983)

(finding expert could not testify about future earnings that included fringe benefits where there was no evidence that the plaintiff received fringe benefits in the past).

Lastly, because Plaintiff now states that Dr. Moore will not testify on direct examination about mitigation as to future loss of income,[3] Defendants' objection to Moore's testimony about Mr. Bethea's future earning capacity is moot, and I need not address it. ECF No. 666 and Plaintiff's proffer at the June 26, 2014 hearing. However, as I stated during the *Daubert* hearing, I will allow Defendants to reserve their right to challenge any such testimony should it become an issue on rebuttal at trial.

For all of the reasons stated herein, Defendants' motion to exclude the testimony of Moore is granted in part and denied in part.

An appropriate Order follows.

---

[3] Mr. Bethea also informed me and the parties that he will offer an opinion "as to discounting [future loss of income] to present value" solely on rebuttal.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS

| | |
|---|---|
| JIMMY BETHEA, | ) |
| Plaintiff, | ) ) ) ) ) ) |
| v. | ) Civil Action No. 11-51 |
| MERCHANTS COMMERCIAL BANK, et al., | ) ) ) ) |
| Defendants. | ) |

AMBROSE, U.S. Senior District Judge

**<u>ORDER</u>**

AND NOW, this 26th day of June, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Exclude Testimony of Richard Moore by Defendants Michael B. Burgamy, William B. Cashion, James E. Crites, J. David McCay, Merchants Commercial Bank, and I. Steven Simon (ECF No. 600) is granted in part and denied in part. Moore's testimony is limited, as stated in the body of the Opinion.

BY THE COURT:

/s/ Donetta W. Ambrose_____
Donetta W. Ambrose, Sr. U.S. Dist. Judge