IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

JIMMY BETHEA,                 )
                               )
                               )
           Plaintiff,        )
                               )
                               )
           v.             )     Civil Action No.  11-51
                               )
MERCHANTS COMMERCIAL BANK,  )
et al.,                        )
                               )
          Defendants.    )

AMBROSE, U.S. Senior District Judge

**OPINION
AND
ORDER OF COURT**

## I.  Synopsis

Pending are Motions for Summary Judgment filed by (1) Defendants Tom Bolt ("Bolt") and BoltNagi, PC ("BoltNagi") (jointly referred to as "Attorney Defendants") at ECF No. [550] and (2) Merchants Commercial Bank ("MCB" or "Bank"), James E. Crites, William B. Cashion, I. Steven Simon, J. David McCay, and Michael B. Burgamy (collectively "Bank Defendants") at ECF No. [584].  All defendants filed briefs in support of their motions.  ECF No. [551] (Attorney Defendants) & ECF No. [585] (Bank Defendants).  Plaintiff Jimmy Bethea filed a brief in opposition, ECF No. [633], to which Defendants replied, ECF No. [656] (Attorney Defendants) & ECF No. [660] (MCB and Bank Defendants).  After careful consideration, and for the reasons set forth below, the motions are GRANTED IN PART and DENIED IN PART.

## II.  Background

The background of this case is well-known to the parties, and I repeat it only as necessary here. Plaintiff Jimmy Bethea is a black male over the age of forty who was employed by MCB as Senior Client Development Officer during the Bank's inception and was subsequently named its Chief Credit/Lending Officer. Bethea claims that he was denied reviews, compensation, and benefits and ultimately was terminated because of his race and because he blew the proverbial whistle on discriminatory-lending practices and improper insider loans. Plaintiff asserts discrimination by MCB in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981,[1] and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et. seq.* He also brings state law claims of discrimination pursuant to Chapter 1 of Titles 10 and 24 of the Civil Rights Act of the U.S. Virgin Islands against all defendants. Plaintiff further purports to assert claims against MCB for breach of duty of good faith and fair dealing, breach of the Bank's Whistleblower Policy as an implied contract, violations of COBRA, violations of 14 V.I.C. § 341 (shareholder derivative suit), and violations of U.S. Whistleblower Laws pursuant to 12 U.S.C. § 1831j; for defamation against Crites and the Attorney Defendants; and tortious interference with contracts against the individual defendants. Bethea seeks punitive and compensatory damages.

### III. Legal Analysis

#### A. Legal Standard

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

---

[1] To the extent that I find Plaintiff's pleadings "ambiguous or deficient" with respect to § 1981 claims against Crites, Simon, Burgamy, and Bolt, Plaintiff seeks leave to amend. Pl.'s Br. 37, n.73. Plaintiff clearly alleged § 1981 claims against MCB only. *See* Amend. Compl. at ¶ 123. Discovery has closed, and it would be prejudicial to allow Plaintiff to amend his complaint at this late date.

law.  FED. R. CIV. P. 56(c).  In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion.  *Int'l Raw Materials, Ltd. V. Stauffer Chem. Co.,* 898 F.2d 946, 949 (3d Cir. 1990).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *United States v. Omnicare, Inc.*, 382 F.3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).  The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs.  *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995); *Saldana v. Kmart Corp.*, 260 F.3d 228, 232, 43 V.I. 361 (3d Cir. 2001).  Importantly, "if the non-movant's evidence is merely speculative, conclusory, 'or is not significantly probative, summary judgment may be granted.'"  *Raczkowski v. Empire Kosher Poultry*, 185 Fed. Appx. 117, 118 (3d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986)).

### B.  Count I - Discrimination[2]

In Count 1, Plaintiff alleges that MCB (i) discriminated against him, (ii) retaliated against him, and (iii) created a hostile work environment for him on the basis of race, sex, and age under

---

[2] I find the manner in which Plaintiff presents his claims, especially his discrimination claims at Count 1, and his factual allegations to be unwieldy.  The Statements of Fact and Counterstatements of Fact, offered by both parties, also are unhelpfully massive and replete with argument.  As the case has progressed, it is clear that certain claims have dropped from focus as others have risen to the fore or made a novel appearance.  Neither the Court nor the defendants bear the burden of winnowing through Plaintiff's voluminous allegations to determine every possible theory on which Plaintiff might or might not elect to proceed.  Accordingly, today's Opinion addresses those theories which I have identified and considers the evidence as a whole and whether it suffices to overcome judgment.

3

Title VII, Section 1981, and the ADEA.  Fourth Amend. Verified Compl. ("Amend. Compl.") ¶¶ 122-24.

### i.  Pre-termination Discrimination

### a.  Exhaustion & Timeliness—Title VII / ADEA

Defendant MCB asks for summary judgment on Bethea's non-termination based claims, arguing that Bethea failed to exhaust his administrative remedies under Title VII and that any such claims also are untimely.  MCB Br. 7-10.  MCB does not address whether Plaintiff's claims are timely under § 1981 because it believes that the Bank is entitled to summary judgment for claims brought under this section as a matter of law.[3]  MCB Br. 21, n. 29.

### 1.  Exhaustion—Title VII / ADEA

Defendant MCB submits that Bethea's Charge of Discrimination does not adequately allege his non-termination based claims—that he was discriminated against with respect to his salary, bonuses, and other benefits, and subject to a hostile work environment claim.  MCB Br. 7-8.  Plaintiff contends he filed his Intake Questionnaire in conjunction with his formal charge and "all of the facts that he asserts now were before the agency and within the scope of what it reasonably should have investigated."  Pl.'s Br. 19.

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief."  *Slingland v. Donahoe*, 542 Fed. Appx. 189, 191 (3d Cir. 2013) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)).  A plaintiff is required to first exhaust administrative remedies under both Title VII and the ADEA by filing a charge with the U.S. Equal Employment Opportunity Commission (the

---

[3] MCB also states that Bethea's Complaint does not cite Section 1981 at Count 1.  MCB Br. 21 n.29.  This is erroneous.  Amend. Compl. ¶ 123.  MCB further argues that Plaintiff cannot survive summary judgment on his racial claim pursuant to Section 1981 because Plaintiff's alleged comparators are black, and MCB believes that Plaintiff has not identified any racially discriminatory adverse actions that give rise to such a claim.  MCB Br. 21, n.29.

"EEOC").  *See id.*  "The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before [he] can initiate a private action."  *Barzanty v. Verizon PA, Inc.*, 361 Fed. Appx. 411, 412 (3d Cir. 2010) (citing *Burgh v. Borogh Council*, 251 F.3d 465, 470 (3d Cir. 2001)).

"Once a charge of some sort is filed with the EEOC, . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ."  *Paul v. Hovensa L.L.C.*, Civ. No. 1:07-cv-00051-AET-GWC, 2013 WL 1408861, at *13 (D.V.I. April 4, 2013) (citing *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960 (3d Cir. 1978)).  "EEOC charges are given a "fairly liberal construction," and "the failure to check a particular box on an EEOC charge . . . is not necessarily indicative of a failure to exhaust the mandatory administrative remedies."  *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 644 (E.D. Pa. 2011) (citing *Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999)).  "Because the EEOC is required to serve notice on the employer against whom the charges are made, this standard also allows an employer to be put on notice of the claims likely to be filed against it."  *Barzanty v. Verizon PA, Inc.*, 361 Fed. Appx. 411, 414 (3d Cir. 2010) (referencing 42 U.S.C. §§ 2000e-5(b), (e)(1)).

Although there are circumstances when an Intake Questionnaire may count as a plaintiff's charge of discrimination, *see Federal Express Corp. v. Holowecki*, 552 U.S. 389, 395 (2008),[4] "the EEOC Charge Form and the Intake Questionnaire serve different purposes."  *Barzanty*, 361 Fed. Appx. at 415.  "An Intake Questionnaire facilitates "pre-charge filing counseling" and allows the Commission to determine whether it has jurisdiction to pursue a

---

[4] Cases where the Intake Questionnaire has counted as the plaintiff's charge are distinguishable from the case at hand.  In *Pizio v. HTMT Global Solutions*, the plaintiff did not file a Form 5 (formal charge) before bringing suit, and the EEOC issued a charge number to plaintiff's Intake Questionnaire, as well as a determination letter based on it.  555 Fed. Appx. 169, 171-72 (3d Cir. 2014).  In *Holowecki*, the Supreme Court deferred to the EEOC's determination that the plaintiffs' Intake Questionnaire was a charge.  552 U.S. at 403-07.

charge." *Id.* (citing *Holowecki*).  "[T]he Intake Questionnaire is not shared with the employer during the pendency of the EEOC investigation."  *Id.*   Accordingly, "[a] plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself.  Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer." *Id.*

Here, Plaintiff submits that he filed his Intake Questionnaire "in conjunction with his charge."  Pl.'s Br. 18.  Plaintiff filed his Intake Questionnaire, which included an eleven page attachment detailing his allegations against the Bank, the Attorney Defendants, and the individual defendants, with the EEOC on July 21, 2010.  ECF No. 619-4, 22-36.  Plaintiff filed his formal charge of discrimination, via EEOC Form 5, on August 20, 2010.  ECF 586-20, 14. Bethea received a Right to Sue letter from the EEOC on February 15, 2011.[5]  *Id.* at 18.  Bethea's Charge of Discrimination included handwritten and initialed corrections by Bethea and in it he alleges:

> I began working as a Senior Client Development officer for the above Respondent on January 2006 and later, Chief Lending Officer, until February 2010 when I was discharged.
>
> I am a black male over 40 years of age.  During most of my time at the Bank I was the only male employee besides Mr. James Crites, the CEO, a white male. The conduct committed by the Respondent against me was wrongful and was intended to cause me harm financially.  Such conduct was done directly by Mr. Crites, CEO, Ms. Annette [sic] Williams, CFO and Personnel Manager, the Board of Directors, Mr. Thomas Bolts, counsel, and others.  Such conduct was taken against me because of the fact that I am a male, African-American Individual, that I am over 40 years of age, and in retaliation for complaints I made about disparate conditions that I considered discriminatory.  I have been treated differently from others who are employed by the Bank.
>
> I believe I was discriminated and retaliated against by being discharged from my position because of my race, black, sex (male), in violation of Title VII of the

---

[5] The EEOC issued Notice of Right to Sue on request stating that "less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge."  ECF 586-20, 18.

> Civil Rights Act of 1964, as amended, and because of my age in violation of the Age Discrimination Act.

ECF 586-20, 14.

I find that his language is such that a reasonable investigation by the EEOC into the disparate treatment alleged by Bethea would have included his claims regarding his salary, bonus, or other benefits—Bethea checked the "continuing action" box, stating a range of dates for when the discriminatory acts took place, and stated that he had made complaints about "disparate conditions that [he] considered discriminatory." *See id.* However, even a liberal interpretation of Bethea's Charge of Discrimination would not include the hostile work environment claim because there is no language analogous to or indicative of a hostile work environment in the Charge. *See Barzanty*, 361 Fed. Appx. at 414 (citing *Anjelino v. New York Times Co.*, 200 F.3d 73, 94-95 (3d Cir. 1999)). Even though Plaintiff alleged a hostile work environment in his EEOC Intake Questionnaire, he failed to do so in his formal charge, and like the plaintiff in *Barzanty*, Bethea cannot bypass the notification requirement and "circumvent the role of the Commission [because this would] be prejudicial to the employer." *Id.* Accordingly, I find that Bethea exhausted his administrative remedies as to his allegations of disparate treatment concerning salary, bonuses, and other benefits but that his hostile work environment claim is outside the scope of his Charge.

### 2. Timeliness

MCB also argues Bethea's pre-termination claims that he was discriminated against with respect to his salary, bonuses, or other benefits, and subject to a hostile work environment fail because they are untimely. MCB Br. 9. MCB does not address this argument under § 1981 because it does not believe that Bethea stated a case for racial discrimination. MCB Reply 3,

n.6.  Plaintiff argues that his Title VII claims are timely pursuant to the continuing violations

doctrine and covered by the four-year statute of limitations under § 1981.  Pl.'s Br. 19.

### A.  *Title VII*

A plaintiff must first present his Title VII employment discrimination claims to the

EEOC.  42 U.S.C. §§ 2000e-5(b), (f) (2002).  A plaintiff who does not timely file with the EEOC

may not then bring suit in federal court on the same claim.  *Bostic v. AT&T of Virgin Islands*,

166 F. Supp. 2d 350, 356 (D.V.I. 2001) (internal citations omitted).  "Plaintiffs are entitled to

180 days in which to file with the EEOC, or 300 days in so-called 'deferral states' (or territories),

where there exists a parallel state (or territorial) administrative entity for investigating complaints

of discrimination."  *Id.*; 42. U.S.C. § 2000e-5(e).  MCB argues that Bethea's pre-termination

claims also fail because they occurred more than 300 days prior to the filing of his EEOC

Charge.[6]  MCB Br. 9.

Plaintiff asserts his claims are timely, and argues he may pursue his Title VII hostile

work environment claim pursuant to the continuing violation doctrine.  Pl.'s Br. 19.  Because I

have already found that Plaintiff failed to exhaust his administrative remedies with regard to his

hostile work environment claim, I need not explore Plaintiff's continuing violation theory.

With regard to Plaintiff's pre-termination claims, I agree with MCB that Bethea has not

presented evidence that he was discriminated against with respect to his salary, bonuses, or other

benefits within the 300-day time period after the alleged discrimination occurred.[7]  Each of

Plaintiff's allegations but one with regard to discrimination as to his salary, bonus, or denial of

other benefits represents a discrete act that, even if discriminatory, is not actionable where time-

barred.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112-13 (2002) (also discussing

---

[6] Neither party contends that the 180 day period is applicable here.
[7] Three hundred days prior to when Plaintiff filed with the EEOC is October 24, 2009.

*Bazemore v. Friday*, 478 U.S. 385 (1986) (per curiam), a pattern-or-practice case finding each discriminatory paycheck issued "a wrong actionable under Title VII"). The only actionable conduct with regard to salary discrimination identified by Plaintiff is his 2009 bonus which MCB paid him in December of 2009. *See* ECF No. 638, ¶ 81 (undisputed that Bethea received 2009 bonus). Still, these time-barred allegations may be relevant "as background evidence in support of [his] timely claim." *Id.* at 113.

### B.  § 1981

MCB argues that Plaintiff's Section 1981 claims are "of no moment" because it believes that Plaintiff has "not identified any specific racially discriminatory adverse action that occurred after April 21, 2007, which gives rise to relief under section 1981." MCB Reply 3, n.6. I agree, and I discuss the substance of Plaintiff's claim more fully, *infra*. Addressing only the timeliness of Plaintiff's § 1981 claim here, I find that because a plaintiff has four years to bring his claim under § 1981, Plaintiff's racially-based discrimination claims, including the hostile work environment claim, are timely pursuant to § 1981. *Jones v. R.R. Donnelley & Sons Co.*, 451 U.S. 369, 383 (2009) (finding a hostile work environment claim brought under Section 1981 is governed by the federal "catch-all" four-year statute of limitations where the claim was made possible by a post-1990 enactment—the 1991 amendments).

#### ii.  Standard

"A Title VII plaintiff may state a claim for discrimination under either the pretext theory set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or the mixed-motive theory set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons." *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008). Similarly, a plaintiff may make

a case of discrimination pursuant to § 1981 under both theories.  *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82.  Courts apply the burden-shifting framework of *McDonnell Douglas* to claims brought pursuant to the ADEA, but not the mixed-motive doctrine.  *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 175-180 (2009)).

> **i.  Mixed-Motive**

In a mixed-motive Title VII case, a plaintiff must demonstrate that one of the five impermissible criteria [race, color, religion, sex, or national origin] was a "motivating factor for any employment practice, even though other factors also motivated the practice."  *Makky*, 541 F.3d at 213 (citing 42 U.S.C. § 2000e-2(m)).  In *Desert Palace, Inc. v. Costa*, the Supreme Court stated that a plaintiff does not need to present "direct evidence" of discrimination to proceed on a mixed-motive theory of discrimination under Title VII.  *Id.* (citing *Desert Palace*, 539 U.S. 90, 95 (2003)).

The Third Circuit has "held that the mixed-motive framework announced in *Price Waterhouse* for Title VII claims is applicable to § 1981 discrimination claims, but that subsequent Congressional amendments to Title VII (the 1991 Amendments) and the Supreme Court's construction of them in *Desert Palace* and *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), are not."  *Barker v. Boeing Co.*, Civ. Action No. 12-6684, 2014 WL 1976894, at *6, n.7 (E.D. Pa. May 14, 2014) (citing *Brown*, 581 F.3d at 182-83).  Accordingly, a plaintiff alleging a mixed-motive § 1981 claim must first present direct evidence of discrimination—"evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance [on the plaintiff's race] in reaching their decision . . . ."  *Brown*, 581 F.3d at 183.  "[I]f the plaintiff shows by direct evidence that [race] was a substantial factor in the employment

decision, the burden shifts to the defendant to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." *Brown*, 581 F.3d at 182 (citing *Price Waterhouse*, 490 U.S. 228, 276 (O'Connor, J. concurring)) (internal quotations omitted).

### ii.  *McDonnell Douglas* / **Pretext**

"[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).  A plaintiff must use the three-step, burden-shifting framework established by *McDonnell Douglas* to bring a claim of discrimination under Title VII using circumstantial evidence.  411 U.S. 792 (1973).  Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a *prima facie* case of discrimination.  *Id.*  To establish a *prima facie* case under Title VII for unlawful employment discrimination in a termination case, a plaintiff must show (1) that he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse employment action, such as termination, and (4) the circumstances of the adverse action "give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804).

If a plaintiff establishes *prima facie* evidence of discrimination, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for his employment decision. *McDonnell Douglas*, 411 U.S. at 802.  The burden of production is light.  *Id.*  An employer satisfies its burden of production by introducing evidence that would permit the conclusion that there was a nondiscriminatory reason for its actions. *Fuentes v. Perski*, 32 F.3d 759, 763 (3d Cir. 1994).  The employer need not prove that the tendered reason actually motivated its behavior,

11

and the Court must accept the proffer without measuring its credibility. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Once an employer defendant has offered a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the employer's alleged reasons are pretext for discrimination. *Iadimarco v. Runyon*, 190 F.3d 151, 158 (3d Cir. 1999). To do so, a plaintiff must submit evidence from which a reasonable fact finder could either disbelieve the employer's articulated legitimate reasons; or conclude that discrimination was more likely than not a motivating or determinative cause of the employer's action. *Fuentes*, 32 F.3d at 764. Plaintiff must show his burden of persuasion by a preponderance of the evidence. *Id.* at 763.

"The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias, and for that purpose both the plaintiff's *prima facie* case and the factfinder's rejection of the employer's proffered evidence are circumstantial evidence of unlawful discrimination." *Id.* Thus, "a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* at 764. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* (emphasis in original) (citations omitted). "If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a number of them, the plaintiff may not need to discredit the remainder." *Id.* at n.7. It does not matter

whether "the employer's decision was wrong or mistaken since the factual dispute at issue is

whether discriminatory animus motivated the employer." *Id.* at 765.  As the Supreme Court has

stated:

> Whether judgment as a matter of law is appropriate in any particular case will
> depend on a number of factors.  Those include the strength of the plaintiff's prima
> facie case, the probative value of the proof that the employer's explanation is
> false, and any other evidence that supports the employer's case and that properly
> may be considered on a motion for judgment as a matter of law.

*Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148 (2000).

At base, "[d]ifferental treatment is, of course, the *sine qua non* of a discrimination claim.

Despite the burden-shifting paradigm at play in such a case, the ultimate burden of proving

intentional discrimination rests, at all times, with the plaintiff."  *Reynolds v. Port Auth.*, No. 8-

268, 2009 WL 1837917, 2009 U.S. Dist. LEXIS 54760, at *27 (W.D. Pa. June 6, 2009).  With

that in mind, "we do not look at each incident in isolation; rather, we examine the 'overall

[employment] scenario.'"  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir.

1996).

### iii.    Pre-termination Discrimination

Plaintiff argues that MCB's pre-termination conduct supports a race-discrimination claim

based on "two interrelated mixed-motives: (1) Bethea went over [Crites'] head and exercised his

Whistleblower rights; and (2) Crites hired subordinate Black employees to use as the help and

[to] be the face of a "local" Bank, but he wouldn't tolerate a Black employee like Bethea who

didn't know his place and questioned his authority."  Pl.'s Br. 11.  However, Plaintiff does not

have direct evidence that MCB discriminated against Bethea based on his race.  Plaintiff states:

"Bethea doesn't allege that Crites acted in an overtly racist manner or called him racist names;

but it is clear that Crites wouldn't tolerate an assertive Black man in his ranks . . . ." Pl.'s Br. 11. Therefore, his mixed-motive § 1981 claims for pre-termination discrimination fail.[8]

Applying a *McDonnell Douglas* framework to Bethea's pre-termination discrimination pursuant to § 1981, Plaintiff's claims also fail. With regard to salary, although Bethea makes some comparisons to Crites, the thrust of his argument, and his only evidence, is that he was discriminated against because the total dollar and percentage amount of his salary increases from 2006 to 2008 was less than the total dollar and percentage of the increases that Williams received. Pl.'s Br. 22-23. Because Williams is also black, Bethea's § 1981 claim cannot survive. ECF No. 638, ¶ 96. Moreover, Bethea's § 1981 claim as to bonus fails for the same reason. Although the parties disagree whether a $5,000 payment to Bethea in 2008 was a bonus, this disagreement does not raise a genuine issue of material fact about whether Bethea was discriminated against with regard to his bonus because other black employees received bonuses that year. ECF No. 638 ¶¶ 72 & 94-96 (Jackson-Lake, Prince, and Tinsley all are black and received bonuses in 2008). Also, there is no evidence of racial discrimination with regard to Bethea's 2009 bonus which he merely disputes was unjustifiably smaller than another black employee (Williams). Pl.'s Br. 22-23. Similarly, Plaintiff cannot establish racial discrimination based on being denied the benefit of a flexible schedule because other black employees had flexible work schedules. ECF No. 638 ¶¶ 93-94; Jackson-Lake Dep. 95; Prince Dep. 52.

I agree with Bethea that as part of plaintiff's burden of showing a *prima facie* case of discrimination, he does not have to point to a comparator but rather must produce "evidence adequate to create an inference that an employment decision was based on an illegal

---

[8] Although I need not consider Bethea's claims based on a mixed-motive theory if he does not establish a *prima facie* case under *McDonnell Douglas*, but because Plaintiff explicitly states this reasoning, I address it first. *See Anthony v. Duff & Phelps Corp.*, 432 Fed. Appx. 140, 143 n.3 (3d Cir. 2010) (citing *Sulit v. Fed. Reserve Bank of Phil.*, 2009 WL 2776480, at *7, 2009 U.S. Dist. LEXIS 77699, at *21 (E.D. Pa. Aug. 28, 2009)).

discriminatory criterion." *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 356 (3d Cir. 1999) (internal citation omitted); *see also Anderson v. Wachovia Morg. Corp.*, 621 F.3d 261, 268-69. Still, Plaintiff is unable to establish a *prima facie* case of § 1981 discrimination as to salary, bonus, or other benefits.  For example, Bethea's argument is not just that he was black and received a smaller bonus but that his bonus was diminished because he was an *assertive* black man asking for what he felt he was entitled.  Pl.'s Br. 22-23.  However, there is no evidence that Williams "does what she's told; doesn't complain; and apparently knows her place," as Bethea argues.  Pl.'s Br. 23.  Therefore, I find that Plaintiff has failed to make out a *prima facie* case of discrimination based on race according to *McDonnell Douglas* and grant summary judgment as to his pre-termination claims pursuant to § 1981.

Plaintiff also fails to establish a *prima facie* case for his only timely Title VII pre-termination discrimination claim—discrimination based on his 2009 bonus.  *See supra*.  The only person that Bethea points to in support of disparate treatment with regard to bonus pay in 2009 is Williams.   In 2009, Bethea received a bonus of $2,229.00 and Williams received a slightly higher bonus in the amount of $3,130.  ECF No. 638 ¶ 81.  Because Williams is a black female over 40 years old, the slightly larger bonus payment could only support a claim of gender discrimination. MCB Br. 12, n.13.  Further, I agree with MCB that because Bethea received a larger bonus in 2009 than every other MCB female employee except Williams, the other Bank employees are not comparators.  MCB Reply 4, n.11; ECF No. 638 ¶¶ 80-85 (undisputed facts). Additionally, there is no circumstantial evidence that supports an inference of gender discrimination such that a reasonable factfinder could conclude that Bethea was treated differently from other black employees because of his gender.  Bethea argues that he was discriminated against for being assertive but presents no evidence or instances demonstrating that

15

Williams avoided discrimination because she "does what she's told; doesn't complain; and apparently knows her place." Pl.'s Br. 23. Plaintiff has done nothing more than set forth bare assertions and conclusory allegations to support his claim. Accordingly, I grant summary judgment as to Plaintiff's remaining Title VII discrimination claim and his ADEA claim regarding his 2009 bonus.

### iv.   Termination Related Discrimination

Under the *McDonnell Douglas* framework, I find that Bethea has not met his burden of establishing a *prima facie* case of disparate treatment. Attempting to establish circumstantial evidence of (race) discrimination, Bethea argues that (i) he is black, (ii) he was competent in his position, (iii) he "blew the whistle" on risky and discriminatory lending practices by MCB, and (iv) he was terminated because the Bank would not tolerate a black man who questioned the actions of Board, which was composed of white men, and (iv) the Bank filled Bethea's position with someone outside of his protected class. ECF No. 633, 11 & 25-27.

MCB contends that Bethea cannot establish a *prima facie* case for lack of a similarly situated comparator, arguing that it is entitled to summary judgment because "Bethea has not established that he was terminated because of his membership in any protected class." MCB Br. 16. The Third Circuit has "repeatedly stated that comparative, or competitive evidence is not a necessary component of a discrimination plaintiff's prima facie case." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 272 (3d Cir. 2010). As the court explained:

> [I]n the context of employment discrimination, "a plaintiff need not prove, as part of her prima facie case, that she was replaced by someone outside of the relevant class," since an inability to make this showing "is not necessarily inconsistent with her demonstrating that the employer treated her less favorably than others because of her race, color, religion, sex, or national origin.

*Id.* (citing *Pivirotto*, 191 F.3d at 353 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978)).

Still, Plaintiff has not met his burden.  Although Plaintiff tries to contort his facts to fit the *McDonnell Douglas* framework, it remains that not only does Plaintiff lack comparator evidence, but even taking all inferences in favor of Plaintiff, he has failed to produce "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *Pivirotto*, 191 F.3d at 356.  Reduced to its essence, the evidence that Plaintiff offers to create an inference that he was terminated because of his race is evidence that actually tends to show that Plaintiff was terminated for reasons other than those protected by Title VII or § 1981.  For example, Bethea offers evidence that he opposed a risky loan over the CEO's objection (e.g., the Ritz-Carlton loan), objected to insider loans and regulatory violations, ECF No. 632 ¶¶ 430-474; Bethea Dep. 179-81, and filed two separate whistleblower complaints about banking issues. ECF No. 632 ¶ 482; Bethea Dep. 247 (verbally alerting Simon about MCB's discriminatory lending practices); ECF No. 632 ¶ 489; Bethea Dep. 318-19; Bethea Supp. Aff. II ¶ 100.  Further, when Bethea perceived that his concerns were unheeded, he threatened to report on the Bank to the FDIC, ECF No. 632 ¶ 510; Bethea Supp. Affirm. II ¶ 24, 41-44, and indeed, reported to the FDIC during an audit of the Bank.  ECF No. 632 ¶ 515, Bethea Dep. 203-06; Bethea Supp. Affirm. II ¶¶ 24, 41-44.  Bethea was terminated shortly after he reported to the FDIC on-site audit team.  ECF No. 638 ¶ 469 (undisputed Bethea was terminated on February 19, 2010); ECF No. 632 ¶ 518; Crites Dep. Ex. 764 (MCB1081-showing FDIC on-site starting January 2010).  Bethea's evidence demonstrates that he was vocal about his objections to banking issues, problem loans, and FDIC violations.  Bethea's evidence creates

an inference that he was terminated for whistle blowing, not because of the impermissible criterion in Title VII or § 1981. *See infra* for a discussion of Plaintiff's FIRREA claim.

Because Bethea has not established a *prima facie* case for Title VII discrimination pursuant to the *McDonnell Douglas* framework, I need not explore it under a mixed-motive theory. *See Anthony*, 432 Fed. Appx. at 143 n.3.

Additionally, I note that Bethea's evidence rests almost entirely on his own testimony and averments. Having carefully reviewed Bethea's Supplemental Affirmation, ECF No. 635-1, I generally find that it would be inadmissible at trial, and find it to be mostly incompetent evidence according to the summary judgment standard. FED. R. CIV. P. 56. Rule 56(c)(4) proscribes: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, *set out facts that would be admissible in evidence. . . .*" Affidavits with self-serving, conclusory allegations do not comply with Rule 56. Although the majority of Bethea's affidavit does not comport with the Rule 56 (for example, all of the statements which constitute Bethea's opinion or belief on matters outside of his personal knowledge), there are portions that are in compliance with the Rule. Accordingly, in ruling on Defendants' summary judgment motions, I consider only the competent evidence offered in Bethea's affirmation. *See Straker v. Deutsche Bank Nat. Trust*, No. 09-cv-338, 2012 WL 7829989, at *5 (M.D. Pa. Apr. 26, 2012) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) and stating: "[A] plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events, and essentially, opinion testimony."); *see, e.g.,* my discussion of Plaintiff's claim against MCB for violating federal whistleblower law, *infra*. I cite Bethea's Supplemental Affirmation in my discussion here merely to show how Bethea has presented his evidence to the court. I further

18

note that any self-serving testimony offered by Bethea for which he has no direct knowledge "cannot create a material issue of fact that allows [the] case to survive summary judgment." *Napier v. City of New Castle*, 407 Fed. Appx. 578, n.6 (3d Cir. 2010) (internal citations omitted).

> **v.    Cat's Paw Theory**

Bethea also attempts to establish a *prima facie* case of discrimination based on a "cat's paw" theory of discrimination.  Pl.'s Br. 10 & 31-32.  Plaintiff argues that Bolt "was an overt racist who had a motive and opportunity to sabotage Bethea; that he had power and influence over Crites . . . [and] inserted himself into the Executive Committee meeting where Bethea was terminated; that he actively assisted Crites [in] finaliz[ing] the termination and draft[ing] the termination letter . . . ."  *Id.* at 31.

In *Staub v. Proctor Hosp.*, the Supreme Court adopted a "cat's paw" theory of employer liability for discrimination when construing the acts of a supervisor under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA").  131 S. Ct. 1186, 1189 (2011).  The Supreme Court held that an employer can be liable for employment discrimination when the ultimate decision-maker is influenced by the discriminatory animus of another employee who intended to and does proximately cause an adverse employment action. *Id.* at 1194.  "Proximate cause required only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect."  *Id.* at 1192 (citing *Hemi Group, LLC v. City of New York*, 559 U.S. 1, ----, 130 S.Ct. 983, 989 (2010)) (internal quotation marks and citations omitted).  Although the Supreme Court noted that the language of the USERRA statute is similar to Title VII, it did not explicitly state that its ruling in *Staub* extended to claims under Title VII.  *Id.* at 1191.

Here, contrary to MCB's assertions, I find that it does not matter that Bolt is not Bethea's supervisor because Bethea is alleging that Bolt's discriminatory animus influenced Crites and the Board, the ultimate decision-makers responsible for Bethea's termination. *See* MCB Reply 7. Moreover, I find that Plaintiff has presented evidence that raises a genuine issue of material fact as to whether Bolt harbored discriminatory animus about Bethea. Bethea Dep. 361 & 367 (testifying that Bolt called him "boy" in a Southern accent).

However, Plaintiff presents no evidence that raises a genuine issue of material fact as to whether Bolt's animus motivated Crites and the Board to terminate Bethea. *See Sulit v. Fed. Reserve Bank of Phila.*, No. 08-2081, 2009 WL 2776480, at *6 (E.D. Pa. Aug. 28, 2009) (stating: "The plaintiff's assertions that the decisionmakers . . . relied on statements by people who harbored racial animus toward the plaintiff . . . does not establish or suggest that anyone with such animus 'influenced or participated in *the decision*' to terminate the plaintiff.") (emphasis in original). Aside from Bethea's conclusory assertions and argument, there is no evidence that Crites or the Board was motivated by Bolt's comments to terminate Bethea. ECF No. 586 ¶¶ 179-192; *see, e.g.,* Crites Dep. II 418 (Crites never heard Bolt refer to Bethea as "boy" in any Board meetings); Bethea Dep. II 367 (Bolt never referred to Bethea as "boy" in any Board or Committee meetings); Burgamy Dep. 86 (Burgamy was not aware of Bolt referring to Bethea as "boy"). Accordingly, no reasonable jury could infer that Bolt's animus was the proximate cause of Plaintiff's termination and summary judgment is denied based on a cat's paw theory of discrimination.

### vi.     Retaliation

MCB argues that it is entitled to summary judgment on Plaintiff's retaliation claim under Title VII and the ADEA, that Plaintiff did not plead a retaliation claim under § 1981, and even if

20

he had, that there is no evidence to support such a claim.  MCB Br. 27; MCB Reply 9-10 & n.35.

Plaintiff argues that evidence of his opposition to the Bank's discriminatory lending practices on

the basis of race survives a summary judgment challenge under § 1981 (even though he states

that this claim should survive regardless because he believes that the Bank did not move for

summary judgment on this claim).  Pl.'s Br. 32-33.

First, I find that Plaintiff sufficiently pled retaliation pursuant to § 1981.  Amend. Compl.

¶ 123.  "To maintain a claim for retaliation, [a plaintiff must show] (1) he engaged in protected

activity, (2) his employer took an adverse employment action against him, and (3) there was a

causal connection between his participation in the protected activity and the adverse employment

action."  *Id.*  The U.S. Supreme Court recently instructed that "Title VII retaliation claims must

be proved according to traditional principles of but-for causation . . . [t]his requires proof that the

unlawful retaliation would not have occurred in the absence of the alleged wrongful action or

actions of the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ----U.S.----, 133 S.Ct. 2517,

2533-34 (2013) (rejecting the mixed-motive *Price Waterhouse* test for Title VII retaliation

claims).  For ADEA and § 1981 retaliation claims, courts use the *McDonnell Douglas* burden-

shifting framework.  *Fenter v. Mondelez Global, LLC*, No. 12-4552, 2014 WL 3809484, at *4

(3d Cir. Aug. 4, 2014) (§ 1981); *Glanzman v. Metropolitan Manag. Corp.*, 391 F.3d 506 (3d Cir.

2004) (ADEA).  Following *Nassar*, it is unclear whether the mixed-motive standard continues to

apply to § 1981 retaliation cases.

"Title VII's anti-retaliation provision does not extend to every form of unlawful

discrimination."  *Johnston v. Forbes Hospice/West Penn Allegheny Health Sys.*, No. 2:08cv860,

2009 WL 2998132, at *7 (W.D. Pa. Sept. 15, 2009).  "[T]o be unlawful under Title VII the act of

discrimination or harassment must be one attributable to the employer and directed toward

someone who is in an employment relationship with the employer or arise in the employment relationship." *Id.* (internal citations omitted).   "[O]nly complaints about discrimination prohibited by Title VII . . . constitute 'protected activity.'" *Davis v. City of Newark*, No. 10-4365, 2011 WL 815678, at *1 (3d Cir. Mar. 10, 2011).

Unlike retaliation under Title VII, which only covers an employee's opposition to an unlawful employment practice, *see Abramson v. William Paterson College*, 260 F.3d 265, 286 (3d Cir. 2001), § 1981 retaliation claims encompass "a complaint of retaliation against a person who has complained about a violation of another person's contract-related 'right.'" *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008).   This includes "the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *Estate of Olivia ex rel McHugh v. New Jersey*, 604 F.3d 788, 798 (citing *Humphries*, 553 U.S. 442 (2008)) (internal quotations omitted); *see also Ellis v. Budget Maint., Inc.*, ----F. Supp. 3d----, Civ. No. 13-2096, 2014 WL 2616829, at *6 (E.D. Pa. June 12, 2014) (noting "the less typical § 1981 retaliation claim [is] one which involves an adverse employment action as a result of making a complaint about a § 1981 violation.").   The Third Circuit has interpreted *Humphries* as requiring "a plaintiff [in a retaliation case to] demonstrate that there had been an underlying section 1981 violation." *Olivia*, 604 F.3d at 798.

I find that Plaintiff has failed to establish a *prima facie* case of retaliation under Title VII or the ADEA.   Bethea has testified that he has made numerous complaints about MCB conduct; however, his evidence does not establish that his complaints about failure to receive a review, raise, bonus, or other benefits, included claims of disparate treatment based on race or gender. *See infra* (discussion of Bethea's pre-termination discrimination claims).   Plaintiff's written

22

complaints during his employment exemplify that he did not allege race or gender discrimination when seeking performance reviews, an increased salary, or bonus.  *See, e.g.,* ECF No. 619-4, 20-21 (first whistleblower complaint to Armour, Simon, and Monsanto); ECF No. 638 ¶ 218 (undisputed that Bethea's April 20, 2007 letter requesting an increase in pay did not assert discrimination based on race, gender, or age); Bethea Dep. 104-105 (same); ECF No. 629-7, 62-67 (August 2009 Letter to Burgamy which does not complain of race, gender, or age discrimination).  Moreover, approximately six months passed between Bethea's August 2009 (second whistleblower) letter to Burgamy and his termination (February 19, 2010).  Additionally, the individual Bank defendants testified that they did not know about Bethea's August 2009 complaint.  *See e.g.,* Crites Dep. 419; McCay Dep. 70.  Although Bethea submits that "the presumption is that Crites knew about it . . . [and the Board members] are simply lying about not opening it," ECF No. 638 ¶ 382, taking the evidence as a whole, I find that no reasonable factfinder could conclude that the Bank retaliated against Bethea, and I grant summary judgment as to Bethea's Title VII / ADEA retaliation claims.  Similarly, Plaintiff's § 1981 retaliation claim regarding his opposition to alleged disparate treatment by the Bank fails.

I further grant summary judgment as to Bethea's § 1981 retaliation claim based on his opposition to discriminatory lending practices.  *See* Pl.'s Br. 32-33.  Although I disagree with MCB that Plaintiff did not sufficiently plead this claim, *see* Amend. Compl. ¶¶ 84, 92, 108; MCB Reply 9-10, I find that MCB is entitled to summary judgment because Bethea has not demonstrated that there was an underlying § 1981 violation.  *See Ellis*, 2014 WL 2616829, at *4-8 (discussing the Third Circuit's precedential decision in *Olivia* and *Olivia*'s underlying-violation requirement).  "Prince, Bethea, and Tinsley discussing how Blacks were not being treated equitably with respect to loans" is not sufficient evidence of an underlying §1981

violation to survive summary judgment on this claim. *See* ECF No. 632 ¶ 477; Tinsley Aff. ¶ 18; *see also* Bethea Dep. 165-67 & 247; Prince Dep. 24 (she denies she had such a discussion). Plaintiff also points to the Board's Meeting Minutes from the February 11, 2009 meeting wherein he alleges that the minutes reflect Simon exhibiting "personal bias in the loan-process . . . that had the effect of discriminating against local Blacks." ECF No. 632 ¶ 488; ECF No. 619-4, 10. I find that no reasonable factfinder would look at this evidence and reach the same conclusion. Accordingly, summary judgment is denied as to Plaintiff's § 1981 retaliation claim.

### vii.    Hostile Work Environment

As explained, *supra*, I grant summary judgment as to Plaintiff's hostile work environment claim pursuant to Title VII because it was not part of Bethea's formal charge with the EEOC and is untimely. Therefore, I now consider Plaintiff's hostile work environment claim under § 1981.[9]

"To establish a hostile work environment claim against an employer, a plaintiff must prove the following: (1) the employee suffered intentional discrimination of their [race]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [race] in that position; and (5) the existence of *respondeat superior* liability." *Ocasio v. Lehigh Valley Family Health Ctr.*, 92 Fed. Appx. 876, 879 (3d Cir. 2004) (section 1981) (internal citation omitted). "[For] a hostile work environment claim, a plaintiff must [show] that [his] 'workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Burgess-Walls v. Brown*, 2011 WL 3702458, at *9 (E.D. Pa. Aug. 22, 2011)

---

[9] Regardless, the requirements are the same for a hostile work environment claim brought under Title VII and § 1981. *See Huston v. Proctor & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

(quoting *Brooks v. CBS Radio, Inc.*, 342 Fed. Appx. 771, 776-77 (3d Cir. 2009)).   Acts of harassment need not be accompanied by racially discriminatory statements; "all that is required is a showing that race is a substantial factor in the harassment, and that if the plaintiff had been white [he] would not have been treated in the same manner."   *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996).

Viewing Plaintiff's evidence in the light most favorable to him, I find that no reasonable factfinder could conclude that Plaintiff was subjected to a racially discriminatory work environment.   First, Plaintiff's claim relies in part upon the arguments he put forth in support of his pre-termination and termination race discrimination claims.   For the reasons discussed more fully, *supra*, that evidence cannot be used to substantiate Plaintiff's hostile work environment claim.

Moreover, aside from the evidence that Bolt called Bethea "boy" and "mocked him in an exaggerated [S]outhern accent," Pl.'s Br. 16; Bethea Dep. 361 & 367, Bethea presents no evidence to support his allegation of racially discriminatory severe or pervasive conduct.   To establish his claim, Bethea attempts to aggregate actions the Bank took "to make him feel small" such as "excluding him from important meetings," "taking away his job responsibilities," "falsely claiming he was responsible for the problems with the downturn in the economy," and "eliminating his loan-approval responsibilities."   Pl.'s Br. 17.   The Third Circuit has recognized that "the advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim."   *Lassiter v. Children's Hosp. of Phila.*, Civ. A. 05-cv-6834, 2008 WL 304891, at *6 (E.D. Pa. Jan. 31, 2008) (citing *Cardenas v. Massey*, 269 F.3d 251, 261-62 (3d Cir. 2001)).   Still,

25

I find that no reasonable factfinder could conclude that the actions Bethea identifies were racially motivated. *See* Pl.'s Br. 17.  Bethea presents only a single incident of overt discriminatory conduct by an agent of the Bank (Bolt's "boy" comment), and provides no evidence that such statements by Bolt were severe or pervasive.  For example, Bolt never referred to Plaintiff as "boy" during board meetings, ECF No. 638 ¶ 179 (undisputed), and there is no evidence that Bolt regularly referred to Bethea as "boy" in a mocking Southern accent or otherwise—Williams, Prince, Jackson-Lake, McCay, Monsanto, Johnson, Cashion, Patridge, Burgamy, and Crites have testified that they have never heard Bolt refer to Bethea as "boy."  ECF No. ¶¶ 179-189; Williams Dep. 92; Prince Dep. 43;  Jackson-Lake Dep. 49; McCay Dep. 44; Monsanto Dep. 50 & 111; Johnson Dep. 154; Cashion Dep. 57; Patridge Dep. 73; Burgamy Dep. 86; Crites Dep. II 418.  Although Bethea disputes Prince's, Jackson-Lake's, and Crites' testimony as to this, Bethea Dep. 363-69, when asked during his deposition if there is "a single person that you can name for me that you can say with certainty was present for one of these conversations [with Bolt in which he spoke in an exaggerated manner to Bethea]?," Bethea testified: "With certainty, no."  Bethea Dep. 367.

### viii.    Age and Gender Discrimination

MCB requests summary judgment on Plaintiff's age discrimination claim under the ADEA arguing that Bethea did not have requisite number of employees for the ADEA to apply to MCB and because Bethea has not submitted sufficient evidence of discriminatory animus to establish a *prima facie* case of age discrimination.  MCB Br. 25-26.  Although I find a genuine issue of material fact exists as to the number of employees MCB had "for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," 29 U.S.C. § 630(b), because I find that Plaintiff has not submitted sufficient evidence from which a

reasonable factfinder could conclude that Bethea was terminated because of age discrimination, as explained more fully *supra*, summary judgment is granted as to Plaintiff's ADEA claim.  *See also* Pl.'s Br. 1-6 wherein he sets forth his theory of the case without alleging any discrimination because of his age.  Similarly, I find that no reasonable jury could conclude that Plaintiff was discriminated because of his sex, as discussed more fully *supra*; therefore, I grant summary judgment as to his gender discrimination claim.

### IV. Count VI - Civil Rights Act of the U.S. Virgin Islands

MCB points out that Bethea generally pled Count VI against "Defendants" and did not specifically name MCB.  Bethea makes no argument that it alleges this count against the Bank.  Accordingly, I grant summary judgment as to MCB on this count.

#### A.  Chapter 17 of Title 24

I previously dismissed with prejudice Plaintiff's claim under Chapter 17 of Title 24 of the Virgin Islands Civil Rights Act ("VICRA") because it does not provide for a private cause of action for employment discrimination claims.  ECF No. 91 and ECF No. 364; *see Berrios v. Hovic, Hovensa, L.L.C.*, Civ. No. 05-cv-192, 2010 WL 2244381, at * 4 (D.V.I. June 3, 2010). Although Defendants acknowledge that the V.I. legislature amended the law in 2011 to include a private right of action, MCB Br. 28, n.41, the amendment occurred subsequent to the acts giving rise to the cause of action before me.  *See* V.I. Code Ann. Tit. 24, § 451a(b).  Bethea does not argue that the amendment should be applied retroactively; accordingly, summary judgment is granted pursuant to Chapter 17 of Title 24.[10]  *See* Pl.'s Br. 8, n.11.

---

[10] Bethea did not allege any claims under Chapter 5 of Title 10 of VICRA in his Amended Complaint.  *See* Amend. Compl. ¶ 140.  Accordingly, there are no claims to dismiss pursuant to that law, as MCB requests.  MCB Reply 18.

### B.  Chapter 1 of Title 10[11]

Chapter 1 of Title 10 of the VICRA does allow for a private cause of action.  *See Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 177 (3d Cir. 1999).  Chapter 1 of Title 10 provides:

> No person, being the owner, proprietor, superintendent, manager, agent or employee of any publicly licensed business or any other business or industrial establishment, shall directly, indirectly or by subterfuge, deny employment in or at such business to any applicant therefor, or engage in or permit any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color or national origin, subject only to the conditions and limitations established by law and applicable in like manner to all persons.

10 V.I.C. § 3(b).

Burgamy, Crites, Simon, and Bolt argue that, as shareholders, they cannot be held individually liable pursuant to *Matheson v. V.I. Cmty. Bank, Corp.*, 297 F. Supp. 2d 819 (D.V.I. 2003).  Because *Matheson* did not impose personal liability on an individual whose involvement in the plaintiff's termination was limited to his capacity as the *sole* shareholder and a board member, I find the case distinguishable.  The court in *Matheson* also stated that "[s]ince Plaintiff does not specify what violations are claimed, the Court can only assume that this claim mirrors Plaintiff's Title VII claim."  *Id.* at 832.  That is not the case here.  *See* Amend. Compl. ¶¶ 141-44. Bethea is suing these named defendants as "agents, officers, and directors of the Bank" based on alleged individual discriminatory acts beyond their status as shareholders.  However, I find that Bethea has not presented evidence from which a reasonable factfinder could conclude that Burgamy, Crites, or Simon individually engaged in (or permitted) discrimination on the basis of race.  Plaintiff's evidence of this rests on a host of conclusory assertions.  Pl.'s Br. 36-37; See

---

[11] I agree with MCB that any conduct that occurred before April 21, 2008 is time-barred pursuant to section 31(4) of Title 5 of the Virgin Islands Code which establishes a three-year limitation period for statutory claims.  *See* MCB Br. 30, n.44.

also *supra* for my discussion of Plaintiff's discrimination claims against the Bank.  As to Bolt, the only evidence of race discrimination is that Bolt called Bethea "boy" in a mocking, Southern accent.  Bethea Dep. 361 & 367.  Because no reasonable factfinder could conclude that Bolt's statement constitutes evidence of "den[ial] of employment . . or engag[ing] in or permit[ting] any discrimination or differential in pay or working conditions for workers doing the same work, on account of race," I grant summary judgment.

## V.  Count III - Breach of Whistleblower Policy

MCB argues that the Whistleblower Policy is not a contract by the plain language of the Employee Acknowledgment that Bethea executed.  I agree.   Twice Bethea executed an Employee Acknowledgment stating *inter alia*:

> I understand and acknowledge I have no express or implied employment contract with the Bank . . . I further understand that any benefits, *policies*, or procedures extended or implemented by the Bank during the term of employment, including *but not limited to* those described in the Employee Handbook that I received on this date, are not intended to and do not create an express or implied contract, and may be modified, supplemented, or discontinued at any time by the Bank with or without notice or reason.  Finally, I understand that during the period of my employment, no representative of the Bank, other than its President, has authority to enter into any agreement for employment for any specified period of time or to make any agreement contrary to the foregoing, and that any such agreement made by the President must be in writing.

ECF No. 586-17, 99 (executed November 27, 2006) & 100 (December 17, 2009) (emphasis added).   Although MCB issued the Whistleblower Policy separately from the Employee Handbook, I find no ambiguity with the Employee Acknowledgment which establishes that the Whistleblower Policy, a policy implemented by the Bank during the term of Bethea's employment, is not a contract and did not create any contractual obligations on the part of MCB.  *See* ECF No. 638 ¶ 205 (undisputed).[12]  Plaintiff has offered no evidence that MCB intended to

---

[12] This ruling is consistent with my October 13, 2011 ruling at ECF No. 91 on Defendants' motion to dismiss. Although Plaintiff claims that I "ruled that the Whistleblower Policy was issued separately and did not appear to be

be contractually bound by the Whistleblower Policy or from which a reasonable person would have believed such intent existed.  I also find no support for Plaintiff's assertion that once an at will employee performs labor, his performance creates a unilateral contract regardless and in spite of an employer's express disclaimer to the contrary.  *See* Pl.'s Br. 43-47.  For all of the reasons identified by MCB in its Reply, ECF No. 660, I decline Plaintiff's invitation to find this situation analogous to the case of *Mills v. United Producers, Inc.*, No. 11-13148, 2012 U.S. Dist. LEXIS 126791 (E.D. Mich., Sep. 6, 2012).  *See* MCB Reply 11, n.45 (explaining why *Mills* is inapplicable and factually dissimilar).  This is in line with Virgin Islands law.  *See Greene v. V.I. Water and Power Auth.*, No. 13-2499, 2014 WL 523363, at *9 (3d Cir. Feb. 11, 2014) (citing *Chapman v. Cornwall*, No. 2012-32, 2013 WL 2145092, at *4 (May 15, 2013) and finding that an employment manual will not create a contract between employer and employee where there is no evidence that the employer intended to be contractually bound by the manual's provisions).

Additionally, I will not invoke the doctrine of promissory estoppel to enforce the Whistleblower Policy.  First, as MCB points out, Plaintiff has not pled a separate promissory estoppel claim such that MCB had fair notice.  MCB Reply 13; *see* Amend. Compl., ECF No. 516.  Moreover, because MCB's Employee Acknowledgment explicitly informs employees that its polices "are not intended to and do not create an express or implied contract" and that any policies "may be modified, supplemented, or discontinued at any time . . . with or without notice or reason" it is clear that promises made in the Whistleblower Policy are not ones upon which employees can reasonably rely.  *See DeFazio v. Starwood Hotels & Resorts Worldwide, Inc.*, 554

---

covered by the disclaimer"—that is not the case.  *See* MCB's Br. 44.  At that stage, I merely stated that Plaintiff's initial complaint was unclear as to the extent to which the Whistleblower Policy derived from another source such that it possibly created an implied contract.  *Id.*  At summary judgment, Plaintiff has not identified any evidence that raises a genuine issue of material fact about whether the Whistleblower Policy is a policy not covered by the Employee Acknowledgement.

Fed. Appx. 692 (10th Cir. 2014) (analyzing a promissory estoppel claim to enforce an employer's code of business conduct).

## VI. Count II - Breach of Duty of Good Faith and Fair Dealing

Although MCB disputes that Bethea cannot maintain a claim for breach of the implied covenant of good faith and fair dealing in the absence of an express contract in the Virgin Islands, I disagree in an employment context.  *See Greene v. V.I. Water & Power Auth.*, 557 Fed. Appx. 189, 201 (relying on *Chapman v. Cornwall*, No. 2012-32, 2013 WL 2145092 (V.I. Feb. 11, 2014)); *see also Wilson v. V.I. Water and Power Auth.*, 470 Fed. Appx. 72, 78 (3d Cir. 2012). The implied covenant of good faith and fair dealing states that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement."  *Smith v. V.I. Water and Power Auth.*, Civ. No. 04-148, 2008 WL 5071685, at *8 (D.V.I. 2008) (quoting Restatement (Second) Contracts § 205).  Virgin Islands courts have recognized a cause of action for breach of the duty of good faith and fair dealing in an at will employment situation such as Plaintiff's.  *See Marcano v. Cowpet Beach Resort, Inc.*, Civ. No. 570/1990, 1995 WL 217600, at *4 (Terr. Ct. V.I. Mar. 9, 1995) (internal citation omitted); *Fraser v. Kmart Corp.*, Civ. No. 2005-0129, 2009 WL 1124953, at *15 (D.V.I. Apr. 24, 2009).

Consequently, because application of the doctrine absent an express employment contract is based on the contractual nature of at will employment, any claims brought by Plaintiff for breach of the covenant of good faith and fair dealing based on his allegation that the Whistleblower Policy is an implied contract cannot lie, and I grant summary judgment.  MCB also argues against a breach of good faith and fair dealing claim based on Bethea's offer letter.  Although pled, *see* Amend. Compl. ¶ 126, Plaintiff has not offered any argument in support of his claim on this basis.  Because I have already ruled that the Offer Letter is not a contract,

summary judgment is granted to the extent Bethea's claim rests on that basis. *See* ECF No. 91, 15.

In the Virgin Islands, a claim of breach of good faith and fair dealing "may lie in an employment relationship if the plaintiff brings forward proof that the employer: (1) acted unreasonably in contravention of his expectations; and (2) took actions amounting to fraud or deceit." *Greene*, 557 Fed. Appx. at 201 (citing *Chapman*) (internal quotations and punctuation omitted). "To successfully allege an act of fraud or misrepresentation, a complainant must demonstrate: (1) a knowing misrepresentation of material fact, (2) intent by the defendant that the plaintiff would rely on the false statement, (3) actual reliance, and (4) detriment as a result of that reliance." *Mendez v. Coastal Sys. Dev.*, Civ. No. 2005-0165, 2008 WL 2149373, at *10 (D.V.I. May 20, 2008). "Fraud occurs only when a person of ordinary prudence and comprehension would rely on the misrepresentations." *Id.*; *see also Hodge v. Daily New Publ'g Co., Inc.*, No. ST-00-CV-726, 2009 WL 8391641, at *8 (V.I. Super. Ct. Dec. 17, 2009) (finding fraud and deceit where employer denied plaintiff part-time work while suffering from a disability by falsely telling him that the position had been filled). "Nonetheless, courts have recognized that a tension exists between [the implied covenant of good faith and fair dealing and at will employment] doctrines insofar as the implied covenant imposes a duty of good faith and fair dealing on an employer who intended to retain total discretion over his or her employment relationships." *Smith*, 2008 WL 5071685, at *8. Accordingly, "the covenant of good faith and fair dealing should not be viewed too broadly, for the risk is that it may be misapplied." *Mendez*, 2008 WL 2149373, at *4.

To ensure that the doctrine is applied appropriately, the District Court of the Virgin Islands, instructs that plaintiffs may seek recovery of contract damages only. *Mendez*, 2008 WL

2149373, at *9 (predicting how the Supreme Court of the Virgin Islands would decide whether the duty of good faith and fair dealing arises under contract law or tort law under the *Erie* doctrine).  The distinction between contract and tort damages arising from a breach of the duty of good faith and fair dealing is important because a breach of the doctrine "constitutes a breach of an obligation created by the underlying contract and, in view of the protection provided by the Virgin Islands' Wrongful Discharge Act,[13] [Virgin Island District Courts have not] create[d] a new common law remedy for wrongful dismissals."  *Id.*  Therefore, a showing that the duties Defendant breached were of a type imposed on members of society as a matter of public policy is a claim based in tort which will not satisfy the requirement that Defendant's actions amounted to "fraud or deceit," *see id.*, and thus a plaintiff cannot prove his breach of the covenant of good faith and fair dealing claim by showing that he was fired because of his race, age, or sex.  *See* MCB Br. 41 (asserting Plaintiff's good faith and fair dealing claim fails without evidence of discrimination).

Similarly, an employer's false rational for termination is not enough; there must be evidence of reliance on a misrepresentation.  *See Mendez*, 2008 WL 2149373, at *10.  Plaintiff's reliance on Delaware law governing breach of good faith and fair dealing in the employment context is unpersuasive because Delaware courts have carved out four exceptions to the at will doctrine—public policy being one of them.  *See Lord v. Souder*, 748 A.2d 393 (Del. 1999) (finding the four categories of actionable claims to be exclusive); *see also E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436 (Del. 1996) (seminal case establishing categories of actionable claims for breach of good faith and fair dealing for at will employees in Delaware).

Here, as Plaintiff seems to acknowledge, his allegation for breach of good faith and fair dealing based on the Whistleblower Policy is encompassed by his claim for breach based on

---

[13] Plaintiff has no pending claim pursuant to this law.

termination of his at will employment.  Plaintiff's argument in support of his claim based on termination focuses on Bethea's allegations that Crites, Simon, Bolt, and Burgamy knew Bethea was acting as a Whistleblower, Pl's Br. 71-78, and because of this they "falsely accused Bethea[] of violations of bank polices[14] and failure to perform job functions as pretext to terminate him." Pl.'s Br. 76-77.  Plaintiff's allegation that MCB's reasons for termination were pretextual is not sufficient to establish fraud and deceit.  Additionally, as explained *supra*, because MCB's Employee Acknowledgment states that its polices "may be modified, supplemented, or discontinued at any time . . . with or without notice or reason" it is clear that MCB did not intend employees to rely on the promises made in its Whistleblower Policy.  Because Plaintiff has not identified a genuine issue of material fact from which a factfinder could conclude that MCB acted fraudulently or with deceit, I grant summary judgment as to Count II.

**VII.    Count V – Tortious Interference with Contractual Relations**

In his pleadings, Plaintiff generally alleged this count against "the individual Defendants" and then makes specific allegations against Simon, Crites, Burgamy, and Bolt.[15]  Amend. Compl. ¶ 137.  Plaintiff has not presented allegations or evidence of this claim against Cashion or McCay, and I grant summary judgment as to these individual defendants.

To state a claim for tortious interference with contractual relations under Virgin Islands law, a plaintiff must allege: (1) a contractual relationship between plaintiff and a third party; (2) the defendant knew about the contract; (3) the defendant intentionally and improperly interfered with the contract; (4) the interference was the proximate cause of one party to the contract failing to perform; (5) the defendant intended to harm the plaintiff by interfering with the contract; and

---

[14] MCB argues that it never claimed that it fired Bethea for any policy violations.  MCB Reply 8.
[15] I disagree that Plaintiff's argument as to this claim demonstrates "an effort to amend his Complaint to allege additional grounds for a tortious interference claim" as alleged by Defendants.  MCB Reply 17, n.68; Att'y Defs.' Reply 11-12.  I find that in his Fourth Amended Complaint Plaintiff asserted this claim against all defendants.

(6) the non-performance resulted in harm to the plaintiff.  *Gov't Guar. Fund of Rep. of Finland (Skopbank) v. Hyatt Corp.*, 955 F. Supp. 441, 452 (D.V.I. 1997).

As an initial matter, Plaintiff's tortious interference claim based on the Whistleblower Policy cannot lie because, as explained *supra*, the Whistleblower Policy is not a contract.  Still, such a claim may be based on a contract terminable at will.  *See* Restatement (Second) of Torts §766 (1979) cmt. d; *Sorber v. Glacial Energy VI, LLC*, Civ. No. ST-10-CV-588, 2013 WL 945461, at *6 (V.I. Super. Mar. 7, 2013).  It is undisputed that Bethea's employment with MCB was at will.  In such an instance, liability will be assigned to one who "intentionally and improperly" interferes with the contractual relationship.  *Id.*

MCB argues that Plaintiff's claim against Crites, Simon, and Burgamy must be dismissed because they acted in their roles as Officers and Directors of the Bank.  MCB Br. 43-45.  "As a general rule, corporate officers are immune from interfering with the contracts of their corporation, as the officers and the corporation are considered a single entity when the officer is acting within the scope of his employment."  *Kia v. Imaging Sci. Int'l*, 735 F. Supp. 2d 256, 268 (E.D. Pa. 2010) (citing *Michelson v. Exxon Research and Eng'g Co.*, 808 F.2d 1005, 1007-08 (3d Cir. 1987) (additional citations omitted).  "[T]he Virgin Islands has expressly adopted the theory that 'a corporate agent may be personally liable in tort if, although acting on behalf of a corporate entity, he directs or participates in the tortious act.'"  *Airlines Reporting Corp. v. Belfon*, Civ. Action No. 2003/146, 2010 WL 3664065, at *39 (Sept. 16, 2010) (internal citation omitted).  In order to prove liability, a plaintiff must prove that each defendant director or officer was "an active and knowing participant in the alleged tortious activity."  *Id.* (quoting *McCracken v. Daimler Chrysler Motors Co. LLC*, Civ. Action No. 07-2202, 2008 WL 920344 (E.D. Pa. Apr. 3, 2008)).

Bethea alleges that "Crites, Bolt, Simon, and Burgamy realized Bethea was becoming a 'problem' because he was disapproving of loans that they wanted on favorable terms . . . he was disapproving of their collateral . . . and preventing them from using the Bank to interfere with competitors of their own businesses." Pl.'s Br. 61. Here, there is a genuine issue of material fact based on credibility as to whether defendants Simon, Crites, and Burgamy were acting within the scope of their employment or based on personal animus and to advance their personal financial interests. For example, Simon denies that he was aware that Bethea thought Simon was doing anything improper. *See* Simon Dep. 105 (stating that Bethea did not tell him that Bethea felt certain payments he made to a broker were improper). Bethea also testified that Simon would propose above-market rates for loans to persons he believed to be in competition with his personal business interests and that Simon personally benefitted from this. Bethea Dep. 244-46. Additionally, Bethea testified that he confronted Simon about the Bank's discriminatory lending, Bethea Dep. 247, but Simon says that Bethea never complained to him about any racially discriminatory loan practices. Simon Dep. 114 & 197.

Another example is the loan Burgamy obtained from the Bank for which Bethea objected to the collateral. Burgamy Dep. 107-08. Bethea thought that Burgamy obtained his loan on terms preferential to what was available to the general public and, therefore, Bethea refused to structure it. Bethea Dep. 243. Burgamy testified that he was not upset by Bethea's opposition, but that it made him doubt Bethea's competency. Burgamy Dep. 107. Additionally, a reasonable factfinder could find that Crites acted based on personal animus because, for example, he testified that he thought Bethea's request for an increased salary was inappropriate, so he did not act on it. Crites Dep. 129; *see* Bethea Dep. 290-91 (testified Crites started treating him badly after his first whistleblower complaint). A reasonable factfinder will have to make

36

credibility determinations when weighing this evidence.  Because credibility determinations are for the trier of fact, I deny summary judgment as to Simon, Crites, and Burgamy on Bethea's tortious interference with contractual relations claim.

MCB also argues that this claim against Simon and Crites is time-barred because two years passed between when Bethea was made aware of the change in the loan approval process (March 2, 2009) and when Plaintiff filed his lawsuit (April 21, 2011).  MCB Br. 45.  Because Plaintiff's allegations against Simon and Crites are based upon more than just their role in changing the loan approval process, I will not grant summary judgment based on MCB's statute of limitations argument.

Additionally, I find that there is a genuine issue of material fact as to whether Bolt intentionally interfered with Plaintiff's employment at MCB because of personal animus. Bethea has testified that Bolt discriminated against him by calling him "boy" in a Southern accent.  Bethea Dep. 361-69.  Bethea also claims that Bolt expected MCB to use him for all of the Bank's legal work, and Bolt was unhappy when Bethea chose to use other attorneys to close deals for MCB.  Bethea Dep. 348-49 (Crites told Bethea to use Bolt), 346-67 (Bethea refused to use Bolt sometimes and "would only use [BoltNagi] on transactions that [he] thought they could handle"), 352 (Bethea sometimes chose Ed Reynolds and Lee Goldman over BoltNagi); Crites Dep. 98 (testifying Bethea favored Reynolds over Bolt but opining "it had more to do with friendship [than competency]"); Reynolds Dep. 23-24 (testifying that Bolt made "disparaging remarks" concerning [his legal] services [to MCB]"); Bolt Dep. 50 (Bolt had "an understanding that . . . since [he] had started the Bank [and] was a founder of the Bank, that unless there was a conflict, that [he] would serve as closing counsel"), 52-54 (Bolt asked Bethea why he was not hired for closings after he discovered that "an increasing number of loans [were] going to Ed

Reynolds"); Goldman Dep. 85 (testified that he heard Bolt complain to Crites that it was "unjustified" that Reynolds was getting "more and more" of MCB's business).  Goldman, a former colleague of Bolt's, also testified that he heard Bolt tell Crites that Bethea did not know what he was doing.  Goldman Dep. 98.  Also, Cynthia Tinsley, an executive assistant and the secretary who transcribed meeting minutes, Tinsley Aff. ¶ 5; McCay Dep. 65, avers that Bolt "would make stupid or inappropriate statements at Board meetings" that were deleted from the Board minutes.  Tinsley Aff. ¶ 21.  Because a reasonable factfinder could conclude that Bolt interfered with Bethea's employment at MCB, I deny summary judgment as to Bolt.

To the extent Plaintiff's claim alleges tortious interference with prospective business relations, I grant summary judgment.  "[A] 'prospective economic relation' is more than some vague, general future employment opportunity," and Plaintiff has not presented evidence of any possible employment opportunity.  *See Grossman v. Daily Racing Form, Inc.*, Civ. No. 93-620 (AET), 1994 U.S. Dist. LEXIS 8123, at *34 (D.N.J. Jun. 10, 1994).

## VIII.   Count IV—Defamation

In order to survive summary judgment on a defamation claim under Virgin Islands law, a plaintiff's claim must include the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (3) either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  *Chapman v. Cornwall*, 58 V.I. 421, 444 (2013) (internal citations omitted); *see also Illaraza v. Hovenza LLC, 2010 WL 2342424*, at *4 (D.V.I June 7, 2010).  The Virgin Islands

follows the Restatement (Second) of Torts concerning defamation causes of action.[16]   It is the function of the court to determine "whether a communication is capable of bearing a particular meaning, and [] whether that meaning is defamatory."   Restatement (Second) of Torts § 614 (2014).

### A.  Attorney Defendants

#### i.   General Allegations of Defamation

Attorney Defendants argue they are entitled to summary judgment for any non-specific claims that Bolt criticized or verbally attacked Bethea.  ECF No. 551, 4.  I agree.  To survive summary judgment on his defamation claims, the record must support Plaintiff's allegations by specifically identifying what alleged defamatory statements were made, including who made them, and to whom the statements were made.  *Smith v. V.I. Port Authority*, Civ. Action No. 02-227, 2010 WL 1381222, at *16 (D.V.I. Mar. 31, 2010).

Even with the benefit of discovery, Plaintiff has failed to identify with the requisite specificity statements, excepting those discussed *infra*, that evidence "Bolt's false attacks regarding Plaintiff's professional opinions at Board meetings." *See* Amend. Compl. ¶ 133.  For example, Plaintiff offers evidence such as Bethea's deposition testimony that "Tom Bolt in the course of directors meetings . . . berate[d] me, [and made] derogatory statements against my professional ability . . . ."  This is not evidence of a specific defamatory statement that will survive summary judgment.  Bethea Dep. 264; *see Chapman*, 2013 WL 2145092, at *6 (granting summary judgment because defamation claim insufficiently pled); *Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 929 (D.V.I. 1997) ("It is not up to the defendant or this court to ferret out what statements the plaintiff is referring to in support of her claim of defamation.").   Similarly,

---

[16] The Restatement (Second) of Torts is made applicable to the Virgin Islands in the absence of local law to the contrary pursuant to 1 V.I.C. § 4; *Sprauve v. CBI Acquisitions, LLC*, Civ. Action No. 09-165, 2010 WL 3463308, at *11 (D.V.I. Sept. 2, 2010) (citing *Ross v. Bricker*, 770 F. Supp. 1038, 1042 (D.V.I. 1991)).

deposition testimony that the Board deleted "stupid and insensitive" comments made by Bolt from the Board minutes without articulating the alleged defamatory statements is insufficient. *See* Pl.'s Br. 69.   The only potentially actionable statements offered with respect to Bolt defaming Bethea are:  (i) "You don't know what you are doing with this loan," to the MCB Board of Directors, Bethea Dep. 355, (ii) stating to Crites, the Bank's CEO in a private conversation, that he [Bolt] did not think that Bethea knew what he was doing, as overheard by Goldman, an attorney who worked for Bolt, Goldman Dep. 98-99, and (iii) a statement in a 2009 email from Bolt to Crites wherein Bolt stated that Plaintiff had not appropriately documented the JFOV transaction and put the bank at risk, Amend. Compl. ¶ 133.   Accordingly, I find that where Plaintiff has not articulated a specific statement, his general allegations of defamation lack sufficient support in the record to survive summary judgment.

### ii.   "You don't know what you are doing on this loan."

Attorney Defendants argue that I should grant summary judgment regarding Bolt's statement: "You don't know what you are doing on this loan" because, even assuming Bolt's statement is true, (i) the statement is a conditionally privileged communication, (ii) the statement is non-defamatory opinion amounting to an insult or criticism, and (iii) the statement does not implicate Restatement (Second) of Torts § 573 because it implies a single mistake.  Defs.' Reply Br. 4-6.

"A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."   Restatement (Second) of Torts § 566; *McDowell v. Paiewonsky*, 769 F.2d 942, 946 n.2 (3d Cir. 1985).  "A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no

matter how unjustified and unreasonable the opinion may be or how derogatory it is." Restatement (Second) of Torts § 566 cmt. c.   It is undisputed that Bolt made this statement within the context of a Board meeting discussing problem loans.   *See* ECF No. 631 ¶¶ 35-44. Although more than mere name-calling, in the statement, Bolt is clearly expressing his personal opinion.   Because the facts underlying Bolt's opinion were disclosed to the recipients of the communication, I find the statement is a non-actionable opinion as a matter of law.

Additionally, "[A] disparaging remark that tends to harm someone in his business or profession is actionable irrespective of harm as such a remark falls within the definition of slander or defamation per se."   *Illaraza v. Hovensa, L.L.C.*, Nos. 2008-cv-59 & 2007-cv-125, 2010 WL 3069482, at *4 (D.V.I. July 30, 2010) (citing *VECC Inc. v. Bank of Nova Scotia*, 296 F. Supp. 2d 617, 623 (D.V.I. 2003)); *see* Restatement (Second) of Torts § 573.   Comment d of Section 573 of the Restatement (Second) of Torts explains that "[a] statement imputing a single mistake or act of misconduct . . . in the conduct of a business or profession is actionable . . . only if the act fairly implies an habitual course of similar conduct . . . ."   This is because "the fallibility of even the most skillful practitioners is such that the mistake, if any, may have been an entirely reasonable one."   § 573, cmt. d.   Because the alleged defamatory statement imputes to Bethea a single mistake: "You don't know what you are doing on *this* loan;" the statement also is not actionable as defamation per se.

### iii.   "Bethea does not know what he is doing."

With this statement, Bolt, again, is expressing his opinion.   However, unlike Bolt's statement before the Board, it is unclear whether the facts underlying Bolt's statement to Crites about Bethea, as overheard by Goldman, were disclosed.   Here, the evidence is that the statement was made "without context to anything specific, [i]t was more of a broad statement."   Goldman

Dep. 98-99.  Because the statement may reasonably be understood to imply the assertion of undisclosed facts that justify the opinion, it is an opinion that is actionable.  Further, the statement does not qualify as defamation per se because it does not disparage a particular quality necessary to Bethea's profession; rather, it is "disparagement of a general character, equally discreditable to all persons."  Restatement (Second) of Torts § 573 cmt. e.

Allegedly defamatory statements of this kind are subject to a conditional privilege. Pursuant to Section 595 of the Restatement (Second) of Torts:

> An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the recipient or a third person, and (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

Further, "[a]n occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know."  *Id.* § 596.  Under Section 596, "common interest" includes "partners, fellow officers of a corporation for profit, fellow shareholders . . . ."  *Id.* § 596 cmt. d.  "The privilege may be abused and its protection lost by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter . . . or by the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged."  *Id.* § 595 cmt. a (citing §§ 600 & 506A); *see VECC, Inc. v. Bank of Nova Scotia*, 296 F. Supp. 2d 617, 623-24 (D.V.I. 2003).  Once a defendant demonstrates that the statements at issue are subject to a privilege, the burden shifts to the plaintiff to show that the defendant abused the privilege by acting with "knowing falsity" or with "reckless disregard."  *Van Hove v. Rock Resorts, Inc.*, Civil No. 80-443, 1983 WL 890028, at *3 (D.V.I. April 6, 1983).  Here, where the parties dispute the

truth of the challenged statement, Pl.'s Br. 4-5; Bethea Supp. Affirm. II ¶¶ 89-94, and there is evidence that Bolt harbored personal, and allegedly discriminatory, animus against Plaintiff, I find there is a genuine issue of material fact from which a reasonable factfinder might conclude that Bolt acted with "knowing falsity" or "reckless disregard," and I deny summary judgment as to this statement.  See *supra* for a discussion of Bolt's animus in my analysis of Plaintiff's claim against Bolt for tortious interference with contractual relations.

### iv.  2009 Email

Plaintiff and Attorney Defendants dispute the existence of an email from Bolt to Crites stating that Bethea had not appropriately documented the JFOV transaction and thus put the bank at risk.  Bolt Br. 6, n.2.  Plaintiff's evidence of the existence of the defamatory email is his own deposition testimony.  Bethea Dep. 408-415.  "To determine whether a nonmoving party's deposition testimony alone is insufficient to withstand summary judgment, the assertions must be compared to the other evidence of record to determine whether they are 'sufficient for a rational factfinder to credit the plaintiff's testimony, despite its self-serving nature.'"  *McBride v. Am. Substance Abuse Prof'ls, Inc.*, 917 F. Supp. 2d 419, 426-27 (E.D. Pa. 2013) (citing *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549-50 (E.D. Pa. 2012)).  I find that a rational trier of fact could credit Plaintiff's testimony as to the 2009 email.

Still, Defendant argues that Plaintiff's defamation claim based on this statement cannot survive summary judgment because the statement is true.  Att'y. Defs.' Br. 7.  Truth is an absolute defense to a defamation claim.  Restatement (Second) of Torts § 581A; *Charleswell v. Bank of Nova Scotia*, No. 605/96, 2001 WL 1464759, at *5 (Terr. V.I. May 1, 2001).  Whether Bolt's statement is false is a question for the trier of fact.  Because I find that disputed issues of

material fact remain on this issue, Defendants motion for summary judgment is denied. *Compare e.g.,* Crites Dep., 73-75 *with* Goldman Dep., 55-56.

### B.  Crites

Although Plaintiff asserts in his brief that Crites made defamatory statements to Bolt, Pl.'s Br. 64, Crites accurately points out that Plaintiff did not allege this in his Complaint.  MCB Reply 16.  Accordingly, I will not consider a claim of defamation based on any publication by Crites to Bolt.

### i.   2007 Performance Review

I agree with MCB that any publication by Crites in May 2008 of Bethea's performance review is time-barred because it is subject to a two-year statute of limitations.  5 V.I.C. § 31(5). In any event, when read in context, I do not find the statements capable of defamatory meaning—any criticism of Bethea is qualified with the language; "it was recognized that this was the first full year of operating, consequently it was difficult to accurately project loan growth given the myriad of variables that can impact the loan process from origination through closing, particularly as systems were in the process of being established.  Effective pricing, particularly in the fee income component, helped to offset the volume shortfall."  ECF No. 619-3, 73.

### ii.  2009 Evaluation

MCB argues that it is entitled to summary judgment on the 2009 evaluation because (i) Plaintiff failed to identify specific false statements in the evaluation that he believes were defamatory, (ii) opinions in performance evaluations are not defamatory, and (iii) publication of the performance review to the Compensation Committee of the Board of Directors was privileged.

First, I disagree that Plaintiff failed to identify the alleged defamatory statements in his evaluation. It is clear that Bethea alleges that any statement critical of his performance contained within the review is defamatory. Because the statements are identifiable from the 2009 evaluation, which is maintained as part of MCB's human resource files, I find Bethea identified the alleged defamation with sufficient specificity.

Plaintiff argues that Crites lost any conditional privilege when he published the statements to Board members. I agree with MCB that the Board members shared a "common interest" with Crites in Bethea's performance because (i) the Compensation Committee clearly had a legitimate interest in the performance of MCB employees, and (ii) Bethea previously wrote to the Board members asking for a performance review and salary adjustment, *see, e.g.,* ECF No. 638 ¶ 223 (undisputed that Bethea wrote to Amour, then a member of the Board of Directors; Crites, as Chair of the Loan Committee; Burgamy, as Chair of the ALCO and Audit Committees; and Monsanto, as Chair of the Compensation Committee). Still, Bethea has presented evidence that Crites did not like Bethea personally and/or professionally, and alleges that he made untrue statements critical of Bethea's job performance in his evaluation to get rid of him. *See, e.g.,* Burgamy Dep. 49-50 (he knew Bethea was complaining about not getting performance reviews and told Crites, the supervisor who would perform any such review) & 52 (Crites agreed with Burgamy that upper management was not entitled to reviews and thought Bethea's salary request was "out of line"); Crites Dep. 129 (Crites thought Bethea's requests, including asking for an increase in salary, were inappropriate so he did not act on it); Bethea Dep. 290-91 (testified Crites started treating him badly after his first whistleblower complaint); Simon Dep. 96-97 (testifying that after Bethea received a raise it was like "oil and water" between Crites and Bethea—that the two were equally displeased with each other); Armour Aff. ¶¶ 6 & 8 (Crites'

demeanor toward Bethea changed after Bethea complained about not getting evaluations or bonuses).  Because Plaintiff has presented evidence showing there is a genuine issue of material fact from which a reasonable factfinder might conclude that Crites acted with "knowing falsity" or "reckless disregard," I deny summary judgment.    A reasonable jury could conclude that Crites abused the conditional privilege.[17]

### iii.  Termination Letter

I deny summary judgment as to the termination letter for the same reasons I denied it as to Crites' 2009 evaluation.  While I agree with MCB that Williams and Nagi—persons on the Compensation Committee to whom Crites published the letter—had a common interest in Bethea's termination letter, MCB Br. 47, questions remain for the factfinder as to whether the conditional privilege was abused.  I note that my decision is not based on Bethea's theory of defamation because of compelled self-publication.  *See* Pl.'s Br. 63-64.  That theory is not recognized in the Virgin Islands, and I will not apply it here.

## IX. Count VII - Shareholder Derivative Claim

In support of summary judgment, MCB argues (i) that there is no evidence that Bethea issued any demands to the Board in his capacity as a shareholder and (ii) there is no evidence that Bethea's demand would have been futile.  MCB Br. 52-53.

"On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings."  *Garber v. Lego*, 11 F.3d 1197, 1201 (3d Cir. 1993) (citing *Kamen v. Kemper Fin. Serv., Inc.*, 111 S.Ct. 1711, 1716 (1991)); *Lewis v. Curtis*, 671 F.2d 779, 784 (3d Cir. 1982), *abrogation rec'g by Lego* (stating: "Whether [a plaintiff] has complied with the demand

---

[17] MCB's argument that statements by a supervisor about an employee's professional proficiency are not capable of defamatory meaning is not based on the law of the Virgin Islands or the Restatement (Second) of Torts.  Because Plaintiff has presented evidence challenging Crites' motive in making the statements and an absolute privilege has not been given to an employer reviewing an employee in the Virgin Islands, I decline to follow the reasoning in the cases cited by Crites.

requirement of rule 23.1 involves solely an examination of the amended complaint.").
Therefore, I will treat Defendants' motion on this count as one to dismiss the Fourth Amended
Complaint rather than as a motion for summary judgment because that is the "proper vehicle for
objections" under Rule 23.1.  *See Abrams v. Koether*, Civ. A. No. 9102809 (JCL), 1992 WL
295195, at *3 (D.N.J. Aug. 7, 1992).

Federal Rule of Civil Procedure 23.1 requires one alleging a shareholder derivative claim
to "state with particularity (A) any effort by the plaintiff to obtain the desired action from the
directors or comparable authority and, if necessary, from the shareholders or members; and (B)
the reasons for not obtaining the action or not making the effort." FED. R. CIV. P. 23.1(b) (West
2014).  The Rule 23.1 requirements "are predicated on the notion that the decision to bring a
lawsuit or to refrain from litigating a claim on behalf of the corporation is a decision concerning
the management of the corporation and consequently is the responsibility of the directors."  *Id.*
(citing *Blasband v. Rales*, 971 F2d 1034, 1048 (3d Cir. 1992)).  "Because of the important
policies behind the rule, 'the demand requirement of Rule 23.1 should be rigorously enforced . . .
.'"  *Lewis*, 671 F.2d at 784 (relying on *Kamen*, wherein the Supreme Court held that in assessing
whether the futility exception to a shareholder's demand on a corporation applies, federal courts
should incorporate state law).[18]

 "Courts will excuse the derivative plaintiff from the demand requirement when his
complaint alleges that a majority of the directors have participated in the underlying wrongdoing
or that the board is controlled by the alleged wrongdoers."  *Lewis*, 671 F.2d at 784.  "To preserve
the vitality of rule 23.1, however, courts have refused to excuse demand simply because a
majority of the directors are named in the complaint and have cautioned that mere conclusory
allegations of director wrongdoing will not suffice to excuse demand."  *Id.* at 785.  The Third

---

[18] The parties cite to no substantive Virgin Islands case law on this issue, and I find none.

Circuit has instructed that "in determining whether demand is necessary, [courts] should consider whether a demand on the directors would be likely to prod them to correct a wrong." *Id.* at 786.

Plaintiff clearly never made a formal demand of the Board.  In his Complaint, Bethea alleges that his allegations about improper director actions regarding insider loans and discriminatory lending, which were approved by the Board, were not addressed.  *See, e.g.,* Amend. Compl. ¶ 148 (detailing misconduct by the Board of Directors, led by Crites, Simon, and Burgamy to approve improper insider loans); *see also* ¶¶ 78, 80, & 84.  Because (i) Bethea's allegations implicate the majority of the Board in wrongdoing, ¶ 80, (ii) Bethea alleges that he was cut out of the loan approval process after objecting to the loans, ¶¶ 78 & 84, and (iii) when Bethea tried to ask the Board to address his concerns via a whistleblower complaint, his allegations were ignored, ¶¶ 86-91, I find that Plaintiff has sufficiently pled the futility of making a demand to the Board.[19]  Moreover, even if I were to apply a summary judgment standard, I find that Bethea has presented evidence that raises a genuine issue of material fact from which a reasonable factfinder could conclude the MCB directors, if presented with evidence of wrongdoing, would not pursue his valid shareholder demand.  *See, e.g.*, Burgamy Dep. 139-40 (admitting he never opened the email attachment detailing Bethea's whistleblower complaints).

MCB also argues that Bethea has failed to adduce any evidence of money or property acquired by the Director Defendants and that he is not entitled to an Order removing the Defendants as Directors.  Because I find that Plaintiff may proceed with his shareholder's derivative claim, these issues remain for the factfinder.  For those persons no longer sitting on the Board, removal, obviously, is a moot issue.

---

[19] The Bank defendants present no authority for their argument that the demand must specify that it is from a *shareholder*.

To the extent Plaintiff intended this claim to apply to Bolt, I grant summary judgment. Bolt is not a director, Plaintiff did not mention him at this count in his Amended Complaint, and although Plaintiff argues that Bolt was a *de facto* director, he provides no support showing that a shareholder's derivative claim can proceed against one who was not a registered director. *See* Att'y Defs.' Reply 12, n.10.

## X.  Count VIII - COBRA

MCB argues that Plaintiff's COBRA claim should be dismissed because it had fewer than twenty employees at the time of Bethea's termination.  The parties have presented no evidence other than the Amended Complaint and Plaintiff's Counterstatement of Facts on this issue. Without evidence to the contrary, I find there is a genuine issue of material fact whether MCB "normally employed fewer than 20 employees on a typical business day during the preceding calendar year."  29 U.S.C. § 1161(b) (West 2014).

## XI. Count IX – Federal Whistleblower Law

MCB argues that I should grant summary judgment as to Plaintiff's claim that it violated U.S. Whistleblower laws because (i) there is no evidence that Bethea made a report to the FDIC and (ii) even if Bethea reported to the FDIC, there is no evidence that MCB knew he had done so when it terminated Bethea.  MCB Br. 34.

"Section 1831j of Title 12 of the United States Code offers a right of relief to employees of insured depository institutions when they provide certain information to federal banking agencies and thereafter suffer employment-related retaliation."  *Fato v. Vartan Nat'l Bank*, No. 07-1291, 2009 U.S. Dist. LEXIS 620, at *6-7 (M.D. Pa. Jan. 6, 2009).  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 states:

> No insured depository institution may discharge or otherwise discriminate
> against any employee with respect to compensation, terms, conditions, or

49

> privileges of employment because the employee . . . provided information to any
> Federal banking agency or to the Attorney General regarding—(A) A possible
> violation of any law or regulation . . . .

12 U.S.C. § 1831j(a)(1) (2014).  The statute "imports the legal burdens of proof applicable to the

Whistleblower Protection Act ("WPA"), 5 U.S.C. § 1221(e)(1)."  *Fato*, 2009 U.S. Dist. LEXIS

620, at *8 (citing § 1831j(f)).  "A plaintiff proceeding under the WPA must demonstrate that (1)

he or she disclosed information (2) that was a "contributing factor" in the adverse personnel

action upon which the claim of action is focused."  *Id.* (citations omitted).  "A contributing factor

means any factor which alone, or in connection with other factors, tends to effect, in any way,

the outcome of the decision."  *Id.*   A plaintiff may establish his *prima facie* case through

circumstantial evidence.  *Id.*

I find that there is a genuine issue of material fact from which a reasonable factfinder

could conclude that Bethea reported a possible violation of law by MCB to the FDIC.  Bethea

Dep. 203-04.  Bethea testified that only he and the FDIC auditing team were present when he

verbally reported MCB's alleged improprieties.  *Id.*   Meeting minutes of the Board reflect that

the FDIC was on-site at the time Bethea said that he reported, and Bethea was terminated

approximately one month later.  See *supra* for my discussion of Plaintiff's retaliation claim.  I

find that a reasonable jury could believe Bethea and find that he reported violations to the FDIC.

Such credibility determinations are inappropriate at the summary judgment stage.  *See In re

Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 841 (3d Cir. 1990).  Similarly, I find that a

reasonable factfinder could conclude that Bethea's disclosure was a contributing factor leading to

his subsequent termination.  MCB disputes Bethea's affirmation that he told Crites, Simon, and

Burgamy that he was going to report the Burgamy loan to the FDIC.  ECF 659, 219; Bethea

Supp. Affirm. II ¶ 24; Crites Dep. II 420; Simon Dep. 140; Burgamy Dep. 110.  Although Bethea

admits that he never told anyone at the Bank that he reported to the FDIC, Bethea Dep. 84, a reasonable factfinder could conclude that the Bank knew that he disclosed to the FDIC because the FDIC was on-site conducting an exam and loan review for approximately four to five weeks starting on January 11, 2010—the timeframe Bethea gave for his disclosure, ECF No. 632-2 at MCB 1081 & Bethea Dep. 206, Crites received feedback from the FDIC as the exam was being conducted, as reflected in the February 15, 2010 Board minutes, ECF No. 628-5 at MCB229, Crites testified that the FDIC criticized MCB's asset quality right before Bethea's termination, Crites Dep. 91, and the FDIC report was "a concern" for the Board in its decision to terminate Bethea.  Monsanto Dep. 85.  When Bethea's affirmation is considered together with the totality of evidence of record, I find that a reasonable factfinder, giving credence to Bethea, could conclude that his FDIC disclosure was a contributing factor in his termination.  Accordingly, summary judgment as to Count IX is denied.

## XII.    Conclusion

Based on the foregoing, the motions for summary judgment filed on behalf of MCB, the individual Bank Defendants, Bolt, and BoltNagi, PC are GRANTED IN PART and DENIED IN PART as detailed above and in the accompanying Order.

Date:  September 8, 2014

BY THE COURT:


/s/ Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

JIMMY BETHEA,                          )
                                       )
                                       )
                Plaintiff,             )
                                       )
                                       )
            v.                         )       Civil Action No.   11-51
                                       )
MERCHANTS COMMERCIAL BANK,             )
et al.,                                )
                                       )
                Defendants.            )

AMBROSE, U.S. Senior District Judge

**ORDER**
**OF**
**COURT**

THEREFORE, this 8th day of September, 2014, it is Ordered that Defendants' Motions

for Summary Judgment at ECF Nos. [550] (Tom Bolt and BoltNagi, PC) and [584] (Merchants

Commercial Bank, James E. Crites, William B. Cashion, I. Steven Simon, J. David McCay, and

Michael B. Burgamy) are granted in part and denied in part.  Judgment is hereby entered for

Defendant(s) against Plaintiff on his claims for discrimination based on Title VII, § 1981, the

ADEA, and the Civil Rights Act of the U.S. Virgin Islands (Counts I and VI), breach of the

Whistleblower Policy (Count III), and breach of the duty of good faith and fair dealing (Count

II).  Partial judgment is entered, as set forth in the Opinion accompanying this Order, as to

Plaintiff's defamation claims (Count IV).  Defendants' motions are denied as to Plaintiff's

tortious interference with contractual relations claim (Count V), his shareholder derivative claim

(Count VII), violations of COBRA (Count VIII), and violations of federal whistleblower law (Count IX).

A pretrial video conference is set for September 18, 2014 at 10:30 AM, Eastern Standard Time (EST).

BY THE COURT:


/s/ Donetta W. Ambrose
Senior U.S. District Court Judge