IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

JIMMY BETHEA,                    )
                                 )
                                 )
            Plaintiff,           )
                                 )
                                 )
        v.                       )      Civil Action No.   11-51
                                 )
MERCHANTS COMMERCIAL BANK,       )
et al.,                          )
                                 )
            Defendants.          )

AMBROSE, U.S. Senior District Judge

**Memorandum Opinion**
**and**
**Order**

Defendants Merchants Commercial Bank, James E. Crites, William B. Cashion, I. Steven Simon, J. David McCay, and Michael B. Burgamy (collectively, the "MCB Defendants" or "Bank Defendants") and Defendants BoltNagi, PC ("BoltNagi") and Tom Bolt ("Bolt") (jointly "Attorney Defendants") timely filed two sets of omnibus pretrial motions.  When Plaintiff's failure to comply with pretrial deadlines necessitated that I reschedule the trial from January 2015 to May 2015, I allowed Defendants to file additional motions *in limine*, over Plaintiff's objection.  Attorney Defendants filed their first omnibus Motion *in Limine* at ECF No. [692] and the Bank Defendants filed their first omnibus Motion *in Limine* at ECF No. [693] with an accompanying brief at ECF No. [694].  Plaintiff responded to the first set of motions *in limine* at ECF Nos. [716] (Opposition to Bank Defendants' Motion) and [717] (Opposition to Attorney

1

Defendants' Motion).   Defendants sought leave for and filed Replies at ECF Nos. [728] (Attorney Defendants) and [730] (Bank Defendants).   Defendants also timely filed additional Motions *in Limine* at ECF Nos. [729] (Attorney Defendants) and [731] (Bank Defendants) with an accompanying brief at ECF No. [732].   Plaintiff responded at ECF Nos. [734] (Opposition to Attorney Defendants' Supplemental Motion) and [735] (Opposition to Bank Defendants' Supplemental Motion).   I note, also, that the parties expounded on their motions in the "special problems" section of the Joint Final Pretrial Order filed at ECF No. [740].   The issues are now ripe for review.   Having carefully considered the parties' motions, Plaintiff's responses thereto, and any replies, I find that Defendants' motions should be granted in part and denied in part, as described more fully herein.   I address the contested evidence *in seriatim*, as the parties have presented it.

## MCB Defendants' First Omnibus Motion *in Limine* – ECF No. 693

1.  Defendants' motion to sever certain claims and order a separate trial is denied.

A.  <u>Plaintiff is not entitled to a jury trial on his COBRA claim.</u>   Although Plaintiff has amended his Complaint on four occasions during this lengthy litigation, at no time did he amend his COBRA Count to include the particular enforcement provision of ERISA under which he seeks "reinstatement of his health insurance, reimbursement of medical bills, and continuation of his health insurance premium payments."   Fourth Amended Verified Complaint, ECF No. 516, Count VIII ¶¶ 154-56; *see* Section 502(a) of ERISA, 29 U.S.C. § 1132.[1]   It is Plaintiff's responsibility to set forth the factual details in support of his claims.

---

[1] The relevant portion of ERISA Section 502, 29 U.S.C. § 1132(a) states:
A civil action may be brought-
(1) by a participant or beneficiary
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

Count VIII, as articulated by Plaintiff, appears to request equitable relief. The Third Circuit has found that causes of action authorized by section 502(a)(3) provide only equitable relief, *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 393 (3d Cir. 1988), and that while causes of action authorized by section 502(a)(1)(B) "are not explicitly denominated as equitable . . . [a] cause of action [under this section] for the recovery of benefits [is] equitable in nature." *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989) (citing *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 48 (3d Cir. 1985) as well as other appellate courts). Because I find that Plaintiff articulates a claim for relief that is equitable and not legal in nature, he is not entitled to a jury trial on his COBRA claim at Count VIII.

B. <u>The Court will submit Plaintiff's Whistleblower Claim to an advisory jury.</u> The parties disagree as to whether the statue pursuant to which Plaintiff pursues his retaliatory discharge claim--Section 1831j, the whistleblower protection provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 or "FIRREA," affords litigants the right to a jury trial. ECF No. 694, 2-3 (MCB) & ECF No. 716, 6-7 (Plaintiff). Defendant MCB argues (i) the Act contemplates that determination of a violation and any remedies flowing therefrom must be made by the Court, and (ii) the statutory language is analogous to the whistleblower provision of the Sarbanes-Oxley Act ("SOX") where federal courts have found no right to a jury trial.[2] ECF No. 694, 2-3. Conversely, Plaintiff likens FIRREA's remedies language to that under the False Claims Act's ("FCA") remedial provision, arguing

_____

(3) by a participant [or] beneficiary . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

[2] I note that the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), amended Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), creating an express right to a jury trial for SOX whistleblowers. 18 U.S.C. § 1514A(b)(2)(E). The cases cited by Defendants addressed the jury trial issue under SOX before the enactment of Dodd-Frank. *See* ECF No. 694, 3.

those similar whistleblower claims were submitted to a jury.[3]  ECF No. 716, 6-7.  Plaintiff further argues he is entitled to a jury trial under the Seventh Amendment.  ECF No. 716, 5.

When determining whether a litigant who has brought a claim pursuant to a federal statue is entitled to a jury trial, a court must look to the "construction of the statute" before engaging in an analysis of the applicability of the Seventh Amendment.  *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987); *Stoneback v. Artsquest*, Civ. No. 12-3286, 2012 WL 4963624, at *4 (E.D. Pa. Oct. 17, 2012) (citing *Pichler v. UNITE*, 542 F.3dd 380, 387 (3d Cir. 2008) (quoting *City of Monterey v. Del Monte Dunes*, 526 U.S. 687 (1999))).  Here, the pertinent portion of FIRREA's whistleblower protection provision states: "Remedies- If the district court determines that a violation of subsection (a) of this section has occurred, it may order [the violator]--(1) to reinstate the employee to his former position; (2) to pay compensatory damages; or (3) take other appropriate actions to remedy any past discrimination."  12 U.S.C. 1831j.  I find that the whistleblower provision is silent with respect to a litigant's right to a jury trial.

Where the construction of a statute is silent regarding the right to a jury trial, a court must then determine if one is required under the Seventh Amendment.  *Tull*, 481 U.S. at 417 n.3 (1987); *see also Stoneback*, 2012 WL 4963624, at *4 (citing *Pichler*, 542 F.3d at 387).  It is well-established that the Seventh Amendment "embodies a 'federal policy favoring jury trials [and] . . . [t]his right must be 'determined according to federal law' in order to achieve the 'uniformity . . . demanded by the Seventh Amendment.' "  *Stoneback*, 2012 WL 4963624, at *4 (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curium)).  The Supreme Court has

---

[3] Relief provided under the FCA includes "all relief necessary" to make a plaintiff whole, including reinstatement, two times the amount of back pay, interest on the back pay, and compensation for any special damages resulting from the discrimination, including litigation costs and reasonable attorneys' fees. 31 U.S.C. § 3730(h).  Doubling of back pay is a remedy also available under the Dodd-Frank Act.

prescribed a two-part test to see whether a jury trial is constitutionally required by the Seventh Amendment:

> 1. Whether the cause of action "either was tried at law [(as opposed to equity or admiralty)] at the time of the founding or is at least analogous to one that was; and
> 2. If the action in question belongs in the law category . . . whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.

*Id.* (quoting *Del Monte Dunes*, 526 U.S. at 707) (internal citations omitted).  "As a general rule, the right to a jury trial is protected by the Seventh Amendment when the claim is a legal one, but not if it is equitable."  *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 411 (3d Cir. 1995).  "Determination of whether a statutory action falls into the legal category, as opposed to equity or admiralty categories, entails inquiries into both the nature of the statutory action and the remedy sought."  *Stoneback*, 2012 WL 4963624, at *5 (citations and quotations omitted in original).  "An action is sufficiently analogous to one extant in the 18th century when it "sounds basically in tort [meaning it provides] redress for violations of rights created by constitution or statute."  *Id.* at *5.  Still, the Supreme Court instructs that "characterizing the relief sought is more important than finding a precisely analogous common-law cause of action . . . ."  *Id.* (quoting *Tull*, 481 U.S. at 421) (internal quotations and citations omitted).  "[T]he Supreme Court has stated that, in general, money damages are legal relief where they are intended [to] compensate the plaintiff for her loss or punish the wrongdoer."  *Id.* (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998)).  "Equitable relief, by contrast, is identified by its measurement according to the value of the wrongdoer's ill-gotten gains."  *Id.* (citing *Del Monte Dunes*, 526 U.S. at 710).  When a plaintiff brings both legal and equitable claims, "the legal claim must be tried to a

jury first, or at least simultaneously with the equitable claim . . . accepting the jury's findings on common facts for all purposes." *Id.* (internal citations and quotations omitted).

Here, the parties do not cite, nor have I found, cases wherein the Third Circuit directly addresses whether whistleblowers have a right to a jury trial pursuant Section 1831j. Because the whistleblower statute at issue protects employees' job interests by prohibiting retaliatory adverse employment action and authorizing courts to award compensatory damages for such violations, I find that a claim brought pursuant to the Act sounds basically in tort. *See* 12 U.S.C. § 1831j.  Nonetheless, I agree with those courts which find it difficult to analogize this claim to one from the eighteenth century.  *See Stoneback*, 2012 WL 4963624, at *9 (analogizing whistleblower claim to wrongful or retaliatory discharge claims and concluding that it is unlikely that a cause of action similar to a whistleblower claim existed at the time the Seventh Amendment was adopted and citing *Spinelli v. Gaughan*, 12 F.3d 853 (9th Cir. 1993) (finding retaliatory discharge "a creature of the twentieth century"); *Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 801 (N.D. Cal. 2008) (finding wrongful discharge at common law)).  Moreover, I find that the statute offers both legal and equitable relief because it allows for reinstatement (equitable) but monetary redress for the interference with a litigant's protected personal or property interest—his job (legal).  *See Stoneback*, 2012 WL 4963624, at *7 (discussing how other courts have characterized relief under various whistleblower statutes).  Because the Supreme Court repeatedly instructs that characterization of the nature of the relief is paramount, *Tull*, 481 U.S. at 421, I find it appropriate to submit the whistleblower claim to the jury.[4]  Moreover, I find Plaintiff's

---

[4] My inclination is that Plaintiff is entitled to a jury trial on his whistleblower claim to the extent that he seeks back pay and compensatory damages but not as to any claim for front pay.  *See Lippert v. Comty. Bank, Inc.*, Case No. 5:03-cv-2741-VEH, 2006 U.S. Dist. LEXIS 100860 (N.D. Ala. 2006) (finding the same).

whistleblower claim to be largely overlapping such that it is likely that there will be issues of fact common to his other claims.  I need not decide now whether the jury's verdict will be binding or advisory.  FED. R. CIV. P. 39(c).  Once this case proceeds to trial and verdict, I will make a definitive ruling as to whether the Seventh Amendment guarantees Plaintiff a jury trial for his Whistleblower Claim, after giving the parties opportunity for further briefing on the issue.

C.  The Court will submit Plaintiff's Shareholder Derivative claim to an advisory jury.  At Count VII, Plaintiff brings his shareholder derivative claim pursuant to 13 V.I.C § 341-42.  *See* ECF No. 516 at ¶¶ 146-47.  With this claim, Plaintiff seeks (i) to have the Director Defendants repay wasted assets, (ii) removal of the Director Defendants, and (iii) "an Order enjoining Defendants from taking such actions in the future."  *Id*. at ¶¶ 151-53.  The Supreme Court instructs that the decision whether a Seventh Amendment right to a jury trial extends to a shareholder's derivative suit depends on the issue presented as claimed by the corporation.  *See Ross v. Bernhard*, 396 U.S. 531, 532-33 & 538-40 (1970).  Accordingly, in a derivative action, both legal and equitable remedies are available—"the Seventh Amendment preserves to the parties in a stockholder's suit the same right to a jury trial that historically belonged to the corporation and to those against whom the corporation pressed its legal claims."  *Id.* at 542.  Accordingly, I must analyze Plaintiff's right to a jury trial on his shareholder derivative claim according to the Seventh Amendment analysis as explained *supra*.  Plaintiff did not address this issue but to say that the issues are entwined with his tortious interference claim.  ECF No. 716, 9.  Defendants argue that because "[P]laintff is essentially seeking restitution for alleged breach of fiduciary duty" the claim is equitable and therefore there is no right to a jury trial.  ECF No. 694, 3.

7

First, I agree with Defendants' characterization of the relief sought by Plaintiff in that he seeks relief for the Directors' breach of their fiduciary duties.  Historically, breach of fiduciary duty claims were within the jurisdiction of the equity courts in 18th century England.  *Pereira v. Farace*, 413 F.3d 330, 338 (2d Cir. 2005), cert. denied, 547 U.S. 1147 (2006) (internal citations omitted).  Second, I must focus on the nature of the relief sought, and "[t]he second stage of this analysis is more important than the first."  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989) (citing *Tull*, 481 U.S. at 417-18).  As the Supreme Court instructs in *Great-West Life & Annuity Ins. Co. v. Knudson*, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Id.* (citing 534 U.S. 204, 214 (2002)).  In Justice Ginsburg's dissent in *Great-West*, she describes restitution as permitting a plaintiff to recover the defendant's unjust gain, rather than a plaintiff's loss.  *Id.* at 340 (citing *Great-West*, 534 U.S. at 229 (Ginsburg, J., dissenting and citing 1 D. DOBBS, LAW OF REMEDIES § 12.1(1), at 9)).  Here, where Plaintiff seeks monetary damages for the alleged "improper loans" that the Directors gave themselves "at improper rates and without proper collateral," I find such relief to be equitable.  *See id.* at 340.  However, to the extent that Plaintiff requests monetary damages based on allegations that the Directors wasted the Bank's assets by causing the Bank to provide other "improper and risky loans without proper collateral," ECF No. 561, ¶¶ 149-51, I find the relief sought is legal because Plaintiff requests compensatory damages for losses sustained.  *See In re Allied Holdings, Inc.*, 525 B.R. 598, 608-614 (Bankr. D. Del. 2015) (finding right to a jury trial where plaintiffs sought money damages to impose personal liability on CEO for breach of fiduciary duty); *OHC Liquidation Trust v. Credit Suisse (In re Oakwood Homes Corp.)*, 378

B.R. 59, 68 (Bankr. D. Del. 2007) (looking to the type of relief requested in *Pereira* to weigh claims against relief sought and finding a right to a jury trial where plaintiff requested monetary damages and improperly transferred fees caused by fiduciary breach).   "[W]here equitable and legal claims are joined in the same action, there is a right to a jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."  *Ross*, 396 U.S. at 537-38.   Accordingly, like Plaintiff's whistleblower claim, I find it appropriate to submit the shareholder derivative claim to the jury, and after the case proceeds to trial and verdict, I will decide whether the jury's verdict will be binding or advisory.  *See* FED. R. CIV. P. 39(c).

2. Defendants' motion to sever liability and damages is denied.  A "district court is given broad discretion in reaching its decision whether to separate the issue of liability and damages."  *Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir. 1978) (citing 9 WRIGHT & MILLER, FED. PRACTICE AND PROCEDURE § 2392).  Indeed, although allowed by Federal Rule of Civil Procedure 42(b), "separation of issues for trial is not to be routinely ordered."  *Id.* (internal citation omitted).  Upon weighing "the various considerations of convenience, prejudice to the parties, expedition, and economy of resources," I disagree with Defendants that the particular facts of this case are unduly complex such that a decision not to bifurcate would confuse the jury and unduly prejudice Defendants.  *See Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984).  However, to the extent Plaintiff may be entitled to punitive

damages, such evidence may be presented only once liability has been established for compensatory damages and at the damages stage of the trial.[5]   *See id.*

3.  Defendants' motion to bar the testimony of Plaintiff Expert Edward McConnell is denied. McConnell is permitted to testify as explained in the Opinion and Order issued at ECF No. 663.   In his response to Defendants' motion *in limine*, Plaintiff argues McConnell's testimony is relevant to establishing his tortious interference claim.  ECF No. 716, 12-14.  As I previously stated, McConnell may opine on Plaintiff's job performance vis-à-vis industry standards, ECF No. 663, 8, but I remind Plaintiff that his claim is against the individual Bank Defendants, not MCB, and he must tailor the evidence presented at trial accordingly. Further, as previously stated in my Order at ECF No. 663, 8, McConnell may not opine that the reasons in the termination letter were pretext or that the reasons were not sufficient grounds for termination.

4.  MCB objects to the introduction of certain evidence based on relevancy.  Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence; and [where] the fact is of consequence in determining the action."  FED. R. EVID. 401.  Moreover, I "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.  Accordingly, I find as follows:

A.  Plaintiff does not object to Defendants' motion to preclude any reference to the Cease and Desist Orders issued to the First Virgin Islands Federal Savings Bank; therefore, the motion is granted.

---

[5] MCB Defendants contend there is no basis for any award of punitive damages in this case.  ECF No. 694, 5.

B. Defendants' motion to preclude the following is granted as not relevant:

    1. Testimony and argument that the Board did not adequately vet Crites

    2. Testimony and argument about the Board's failure to discipline or discharge Crites

    3. Testimony and argument about the Board's failure to discipline or discharge Williams

    4. Testimony and argument that the FDIC required someone other than Crites to be Chief Lending Officer.

C. Defendants ask me to preclude testimony and argument relating to alleged disparities between Bethea's salary and salaries reported by "salary.com" or any testimony about alleged disparities between Bethea's salary and the salary or benefits paid to Crites. ECF No. 694, 10. The fact that Bethea used the information from salary.com to request a raise may be relevant to his claims against Crites; however, the actual salary information that Bethea obtained and used in making this request to Crites is not relevant. To the extent expert Moore uses the salaries.com information in formulating an opinion on damages, Defendants can challenge Moore's methodology on cross-examination. *See* Order on Defendants' *Daubert* motion as to Expert Moore, ECF No. 668, 9. Defendants also object to testimony from Plaintiff about any alleged disparities between Bethea's salary and the salary and benefits paid to Crites. ECF No. 694, 11. Plaintiff does not address this motion, and I do not find it relevant; accordingly, the motion is granted. MCB may refer to Crites' salary and/or bonuses for the limited purpose of rebutting the expert testimony of Richard Moore with regard to what Plaintiff would have earned from February 2010 through the end of his work life had he not been separated from MCB. *See* ECF No. 694, n.5.

D. Defendants' motion to preclude testimony or argument relating to failure to pay a pre-termination bonus at the end of 2008, an inadequate bonus size in 2009, and failure to pay

11

retroactive compensation/benefits as stated in the offer letter is granted as not relevant to the remaining claims.[6]   Defendants' motion regarding denial of flextime is denied without prejudice.[7]   *See* Restatement (Second) of Torts § 766 cmt. k (interference may be "by depriving him of the means of performance or by misdirecting the performance . . . .") & r ("The presence or absence of ill will toward the person harmed may clarify the purposes of the actor's conduct and may be, accordingly, an important factor in determining whether the interference was improper.").   Defendants may reassert their motion at trial.   I remind Plaintiff that evidence relevant to the tortious interference claim must show that the *individual* Bank Defendants' interference was improper under the particular circumstances. Restatement (Second) of Torts § 767 cmt. b, d, & j.

E. Similarly, Defendants' motion to preclude testimony or argument about alleged unfair treatment of Bethea is denied to the extent that Bethea presents evidence relating to conduct by the individual Bank Defendants.   At trial, Bethea may not testify to general grievances about his working conditions.   Bethea may present evidence that Crites uninvited him to a Strategic Planning retreat in February 2009.   Testimony about his office size must be presented as it relates to his tortious interference claim against an individual Defendant.   It cannot be presented as an unfulfilled benefit from Plaintiff's offer letter.   Plaintiff being stripped of his lending authority is relevant if the evidence relates to conduct by an individual Bank defendant.

F. Defendants' motion to preclude testimony or argument about miscellaneous Bank matters is denied:

---

[6] In his response, Plaintiff discusses this evidence as relevant to the claims against Crites only.
[7] In his response, Plaintiff discusses this evidence as relevant to the claims against Crites only.

1. Plaintiff may offer evidence showing Bethea asked for additional staff in his Department and Crites refused.  I find this relevant to Plaintiff's tortious interference claim.

2.  Defendants' motion to preclude testimony or argument about alleged removal of information from Board meeting minutes is denied.

3. Defendants' motion to preclude testimony or argument about the Bethea's opinions about the Bank's selection of counsel, attorneys who worked for MCB, and conflicts of interest is denied.  I find this information relevant to Plaintiff's tortious interference claim and its probative value is not substantially outweighed by unfair prejudice, as submitted by Defendants.  FED. R. EVID. 403.

4.  Defendants' motion to preclude argument about the loan officers hired by MCB after Plaintiff was terminated is granted in part.  Plaintiff may present evidence that a loan officer hired by MCB to replace him after he was terminated was a close friend of Crites; however, as Plaintiff's discrimination claim based on race was dismissed, the race of such person is not relevant.

G. Defendants' motion to preclude testimony or argument about Bethea's "professional opinion" about the importance of annual reviews of all employees is granted.  He can testify that he went to Crites and asked for a review pursuant to a Bank policy.  He may not testify that annual reviews protect the Bank from charges of discrimination.

H. Defendants' motion to preclude testimony about Crites refusal to evaluate Bethea is denied in so far as it relates to any argument by Bethea that had he been evaluated he would have received larger raises or bonuses.  Plaintiff may present evidence such evidence as it relates to his claim against Crites for tortious interference.

13

I. Defendants' motion to preclude testimony or argument about the MCB Handbook is denied. Plaintiff may not assert that MCB "made promises to Plaintiff as set forth in the Handbook" but he may produce evidence showing that Defendants did not follow the Handbook policies.

J. Plaintiff does not object to Defendants' motion to preclude testimony or argument about the inability to get loans approved for local people, people of color, or about alleged discrimination against customers of color.  ECF No. 716, 23.  Accordingly, it is granted.

K. Defendants' motion to preclude argument that the MCB defendants "treated the Bank like it was their back pocket" is denied without prejudice.  Defendants may renew their objection at trial based on the evidence presented.

L. Defendants' motion to preclude testimony or evidence about violations of Regulation O in making loans to shareholders is granted in so far as Plaintiff may not present evidence, including expert testimony, for the purpose of attempting to show that MCB in fact violated Regulation O—it is not relevant.  Plaintiff's Whistleblower claim is based on a statute that protects whistleblowers who provide information to a federal banking agency regarding "a possible violation of any law or regulation."  12 U.S.C. § 1831j.  Therefore, Plaintiff may present evidence that he thought MCB violated a regulation, and he may name the regulation. Bethea may also testify about conduct by Burgamy that he thought violated the relevant regulation and state what, if anything, he did about the disagreement.

M. Plaintiff does not object to Defendants' motion to preclude testimony or argument about the mental competency of William Cashion, about any proceedings outside of this jurisdiction which involved a challenge to Cashion's competency, and about Cashion's loans to shareholders.  Accordingly, the motion is granted.

14

N.  Defendants' motion to preclude testimony or argument about the email entitled "whistleblower" that was sent to Defendant Burgamy is denied.  The jury can be instructed as necessary as to the difference between the complaint made by Plaintiff to Burgamy pursuant to MCB's policies and Plaintiff's reporting to the FDIC which is the basis for his federal whistleblower claim.

O.  Defendants' motion to preclude testimony or argument by borrowers about the professionalism of Plaintiff in handling their loans is denied without prejudice.  However, for the evidence to be relevant, only persons with personal knowledge about the facts and circumstances of the loans that Plaintiff is accused of mismanaging may render a lay opinion about Bethea's work performance, and only after Plaintiff has laid a proper foundation.  *See* Fed. R. Evid. 701.

P.  Plaintiff does not object to Defendants' motion to bar Plaintiff from recovering for alleged losses to the Bank.  ECF No. 716, 26.  As agreed by the parties, any recovery accrues to the Bank.  However, Plaintiff did not address the second part of Defendants' motion seeking to preclude argument or testimony that the actions of defendants "damaged the bank portfolio and have put the value of the bank in jeopardy and decreased the value of the stock of the corporation."  ECF No. 694, 23.  Defendants argue that such testimony must be proven by expert testimony.  *Id.*  Because Plaintiff's expert did not opine on the economic condition of the Bank generally, Plaintiff cannot offer competent evidence on the value of the Bank.  Discovery is closed and Plaintiff is precluded from presenting newly obtained expert opinions.

Q.  Plaintiff does not object to defendants' motion to bar testimony or argument about liability insurance or settlement offers; accordingly, the motion is granted.

15

5. With regard to other testimony or argument that Defendants' allege is improper:

A. Defendants ask me to bar testimony or argument about claims not included in Plaintiff's Complaint.  Plaintiff confirms that he "has no intention of now bringing a 'conspiracy' claim," as asserted by Defendants.  ECF No. 716, 27.  Because Plaintiff is represented by seasoned and competent counsel, I am confident that the parties in the case will comply with this Order and all of my previous rulings at trial; therefore, I deny this motion without prejudice.

B.  Defendants' motion to bar testimony or argument about discovery issues in the presence of the jury is granted.  Plaintiff confirms that he has "no intention of making this argument or offering any evidence in this regard."  ECF No. 716, 27.  This includes evidence or argument that Defendants hid or failed to disclose the FDIC examination or related reports.  *Id.*

C.  Defendants' motion to bar Plaintiff from arguing the honesty of Defendants at closing is denied without prejudice.  At closing, Plaintiff is permitted to argue reasonable inferences and comment on a witness's credibility based on the evidence presented.

D.  Defendants' motion to bar testimony about medical causation is granted.  See *infra* my discussion of the Attorney Defendants' Second Omnibus Motion *in Limine* at paragraph 1.

6. At trial, Defendants ask me to order the parties to identify the witnesses that each actually intends to call the next day by 5 p.m. of the preceding day.  The motion is granted and the parties shall proceed accordingly.

## MCB Defendants' Second Omnibus Motion *in Limine* – ECF No. 731

1. Defendants' motion to preclude testimony about Crites' allegedly improper treatment of other MCB employees is granted.  Plaintiff agrees that such evidence is not relevant to his case-in-chief.  ECF No. 735, 4.  Plaintiff may ask me to revisit my ruling should he believe such

evidence is necessary on rebuttal.  I do not find that this is an issue that should be reserved for trial, as I agree with the parties that such evidence is not relevant to the claims being tried and the probative value is substantially outweighed by the danger of unfair prejudice and confusion. FED. R. EVID. 403.  Similarly, testimony by current or former MCB employees that Plaintiff was a good employee or that he did his job or was a good boss is not relevant unless the witness has personal knowledge of facts and circumstances concerning the problem loans which Plaintiff is accused of mismanaging.

2.  Defendants' motion to preclude the testimony of Maria Serbia is granted in part.  Plaintiff asserts that he would call her "as an impeachment witness if the testimony developed at trial is such that Crites made no mistakes, caused no problems, or that any violation of bank policy by management deserves termination."  ECF No. 735.  As Crites performance is not the issue in this case, I am reluctant to allow such testimony.  However, if Plaintiff believes that such impeachment evidence becomes relevant, I will consider the issue at trial.  Plaintiff is not permitted to call Serbia as a witness prior to consulting with the Court.

**Attorney Defendants' First Omnibus Motions *in Limine* – ECF No. 692**[8]

1.  Defendants' ask me to exclude reference to alleged statements which I have already found to be non-defamatory.  ECF No. 692, 1-4.  Plaintiff argues that such statements are relevant to his tortious interference claim.  ECF No. 717, 5-6.  As Defendants state, to establish his tortious interference with contract claim, Plaintiff must show that the individual Defendants' interfering conduct is intentional and improper.  Restatement (Second) of Torts § 766.  The factors for determining impropriety include: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the inference, and (g) the relations between the parties."  Restatement (Second) of Torts § 767.  Because Plaintiff has the burden of proving a *prima facie* case of the alleged tortfeasor's improper conduct, unless the probative value of such non-actionable statements is substantially outweighed by the danger of unfair prejudice and confusion of the issues, Defendants' motion is denied and any potential confusion or prejudice can be addressed with a limiting instruction.

---

[8] Plaintiff alleges that the Attorney Defendants have recast a second summary judgment motion as a motion *in limine* and, therefore, he asks me to sanction the Attorney Defendants pursuant to Rule 11 of the Federal Rules of Civil Procedure "for wasting the Court's and Plaintiff's time and resources."  *See e.g.,* ECF No. 717, 6 & 12.  As Plaintiff points out, the standard of review for a motion *in limine* is quite different from the one I applied at summary judgment.  The purpose of a motion *in limine* is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (internal quotations and citations omitted).  While I understand Plaintiff's argument, and at times, I find that the Attorney Defendants have confused the standards, ultimately, I conclude that the purpose of the Attorney Defendants' brief is to argue that certain evidence should be precluded from trial.  Additionally, because the Third Circuit has held that sanctions should only be imposed "in the exceptional circumstances where [] a motion is patently unmeritorious or frivolous," *Hilmon Co. (V.I.), Inc. v. Hyatt Intern., SA*, 138 F.R.D. 66, 69 (D.V.I. 1991) (citing *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)), and because Plaintiff has not complied with the procedural prerequisites for a Rule 11 motion for sanctions, I find sanctions are not warranted in this instance.  *See* FED. R. CIV. PRO. 11(c)(2).

*Mossman v. Moran*, Civ. No. 2004-31, 2004 WL 1664010, at *5 (citing *Gov't Guar. Fund of Rep. of Finland v. Hyatt Corp*, 955 F. Supp. 441, 453 (D.V.I. 1997)); FED. R. EVID. 403. Turning to Defendants' specific objections:

    A.   Statements that Bolt "criticized or verbally attacked Bethea" – Motion denied.

    B.   Statements that Bolt "falsely attacked Bethea regarding Plaintiff's professional opinions at Board meetings" – Motion denied.

    C.   Statements that "Bolt in the course of directors meetings . . . berated Bethea and made derogatory statements against his professional ability." – Motion denied.

    D.   Statements that "the Board deleted 'stupid and insensitive' comments made by Bolt from the Board meeting minutes" – Motion denied.

    E.   Bolt's statement before the Board to Bethea: "You don't know what you are doing on this loan" – Motion denied.

2.  Defendants move to exclude any reference to allegedly defamatory statements not previously identified.  I deny this motion as moot.  I have already decided which actionable statements survive summary judgment.  *See* ECF No. 669, 38-46.  Moreover, as explained, *supra*, I find that certain non-defamatory statements are relevant to Plaintiff's other claims and its probative value is not substantially outweighed by the potential prejudice to Defendants.

3. Defendants' motion to exclude any reference to the 2009 email from Bolt to Crites is denied. However, any discussion of discovery disputes is irrelevant and is prohibited.   *N.H. Ball Bearings, Inc. v. Jackson,* 969 A.2d 351, 361 (N.H. 2009) ("[D]iscovery is generally within the province and discretion of the trial judge, not the jury.").  Plaintiff may testify as to the email and Defendants may present evidence rebutting its existence.

4.   Defendants' motion to exclude evidence of Bolt's alleged use of the word "boy" is denied.   It is relevant and its probative value is not substantially outweighed by any prejudice alleged by Defendants.   Defendants may rebut Plaintiff's evidence at trial.   *See* ECF No. 692, n.5.

5.   Defendants' motion to exclude reference to Bolt's alleged statement to Crites that Bolt did not think that Plaintiff knew what he was doing is denied.   I previously denied summary judgment as to his statement.   ECF No. 669, 43.

6.   Defendants' motion to exclude reference to a conflict of interest concerning Bolt's representation of JFOV, LLC is denied.

7.   Defendants' motion to exclude any reference to Bolt's alleged anger concerning Plaintiff using other attorneys is denied.

8.   Attorney Defendants ask me to limit the testimony of Cynthia Tinsley, and I find as follows:

   A.   Complaints concerning how and why Tinsley was terminated from MCB are not relevant – Motion is granted.

   B.   Tinsley may testify that Bolt made "stupid or inappropriate statements at Board meetings" and that Bolt would "speak to Bethea in a demeaning manner."   Defendants may challenge this testimony on cross-examination – Motion is denied.

   C. Defendants' motion limiting Tinsley's testimony about allegations that local blacks had difficulty getting loans from MCB is granted.   This information is not relevant.[9]

9.   Defendants' motion to prohibit Plaintiff from admitting the affidavits of Leigh Goldman, Wayne Wicker, and Jim Armour in his case-in-chief is granted.   However, Plaintiff may use the statements for impeachment by prior inconsistent statement.   The prior statement will not come

---

[9] Plaintiff did not address this motion in his response.

20

in for the truth of its contents but only for the impeaching fact that it was said unless it complies with Federal Rule of Evidence 801(d)(1)(A).   Additionally, Defendants move to prohibit the substance of the affidavits asserting, *inter alia*, that the evidence is not relevant.   ECF No. 692, 16-18.   Plaintiff asserts that these persons will testify at trial.   ECF No. 717, 13-14.   Accordingly, I find:

A. Defendants' motion is denied in so far as Goldman, if he has personal knowledge, may testify to the facts and circumstances of the loans that Plaintiff is accused of mismanaging and, if a proper foundation is laid, may render a lay opinion about Plaintiff's work performance.   *See* FED. R. EVID. 701.   This evidence is relevant to Plaintiff's tortious interference claim.   Any conversations that Goldman may testify to between himself and Bolt may be privileged.   Without more information from Defendants as to the circumstances and substance of the statements they are trying to preclude, the motion is denied without prejudice.

B. Defendants' motion as to Wicker is granted.   "[T]estimony in the form of an opinion is limited to one that is [*inter alia*] . . . helpful to clearly understanding the witness's testimony or to determining a fact in issue . . ."   FED. R. EVID. 701(b).   Defendants argue that Wicker's testimony is impermissible opinion because Wicker's communications with Plaintiff were casual, ended in March or April 2007—three years prior to Plaintiff's termination, and thus the testimony is not relevant, would cause confusion, and mislead the jury.   I agree.   The motion is granted; Plaintiff has not established how this information would help the trier of fact.

C. Defendants' motion as to Armour's testimony is granted in part.   Where Armour has personal knowledge, he may testify to the facts and circumstances of the loans that Plaintiff is accused of mismanaging and, once a proper foundation has been laid, give his opinion about Bethea's work performance.   *See* FED. R. EVID. 701.   Armour may not testify that he was not in

21

favor of loans to Directors or that he regarded them as a conflict of interest.  Armour's personal opinion on the issue is not relevant and does not "make it more probable that Plaintiff reported FDIC violations," as Plaintiff asserts.  *See* ECF No. 717, 14.   Additionally, Armour's conversations with Board members regarding their satisfaction with Plaintiff's work prior to his separation from MCB may not be relevant.  Without more information as to the circumstances of these conversations (i.e., when they occurred, between whom, etc.), the motion is denied without prejudice.

**The Attorney Defendants' Second Omnibus Motion *in Limine* – ECF No. 729**

1.  Defendants' motion to exclude testimony from Plaintiff's treating physicians is denied; the evidence is relevant.[10]  *See* FED. R. EVID. 701.  "Treating physicians may testify as lay witnesses with regard to treatment and diagnosis, but not as to causation unless 'the connection is a kind which would be obvious to laymen, such as a broken leg from being struck by an automobile.'" *Washington v. HOVENSA, LLC*, Civ. Action No. 06-97, 2011 WL 6965855, at *1 (D.V.I. Dec. 13, 2011) (citing *Franklin v. Virgin Petroleum Diamond, Inc.*, 53 V.I. 149, 152 (V.I. Super. Ct. 2010)).  "Our Court of Appeals [] has held that expert testimony is required to prove causation in cases where 'the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson.' " *Id.* (citing *Redland Soccer Club v. Dept. of the Army*, 55 F.3d 827, 852 (3d Cir. 1995)); *see also Rowland v. Novartis Pharm. Corp.*, 9 F. Supp. 3d 553, 567 (W.D. Pa. 2014).  Neither party has quoted directly from nor produced the physicians' reports or notes wherein any of the physicians opine about causation.  Defendant relies on Plaintiff's assertions in his portion of the Joint Final Pretrial Order that "the stress

---

[10] Although Plaintiff makes argument against preclusion of the treating physicians' medical records and notes, I find that the Defendants moved only to either exclude or limit the scope of the treating physicians' testimony.  Therefore, I make no ruling on this issue.

caused him to develop a pinched nerve in his neck from the stress for which he was treated by Dr. Weisher in February 2010 . . . ."  ECF No. 729, 2; *see also* ECF No. 740, 47.  Based on the information before me, I find that whether Plaintiff's pinched nerve and stress was caused by Plaintiff's termination or treatment at work would not be obvious to a layperson.  Accordingly, the treating physicians are precluded from testifying as to causation.

2.   Defendants' motion to exclude MCB borrowers from testifying about Plaintiff's alleged professionalism and competence is denied without prejudice.  However, only persons with personal knowledge about the facts and circumstances of the loans that Plaintiff is accused of mismanaging may render a lay opinion about Bethea's work performance, and only after laying a proper foundation.  *See* FED. R. EVID. 701.  Otherwise, the proffered evidence is not relevant. Because Defendants contend that they believe Plaintiff intends to call many defaulting MCB borrowers to testify, I caution Plaintiff that I will not allow the trial to languish due to repetitive and cumulative testimony.  I have allotted adequate time for this trial, and Plaintiff should prepare his case accordingly.

3.   Defendants' motion to exclude Plaintiff's witnesses who were not previously disclosed is denied without prejudice.  Plaintiff asserts that all of the witnesses identified by Defendants, with the exception of Maria Serbia and Steve Mark Hayden, were identified in Plaintiff's response to Interrogatory No. 12 in accord with FED. R. CIV. P. 26(a)(1)(A)(i).[11]  Consequently, the motion is denied without prejudice.  Defendants may reassert their motion in advance of trial if they believe Plaintiff's response did not adequately comply with the Rule.  Additionally, because Plaintiff states that Maria Serbia and Steve Mark Hayden will be called solely for impeachment,

---

[11] Plaintiff states he attached his response to Interrogatory No. 12 as Exhibit 1, but I could not find it on the docket.

I order their testimony is so limited.  See also, *supra*, for additional restrictions on Serbia's testimony.

4.   Defendants' motion to preclude Plaintiff from alleging new facts concerning the circumstances of Bolt's alleged defamatory statement to Crites that Bethea did not know what he was doing is denied.  Plaintiff asserts now that the statement was also made in front of "the wives."  ECF No. 729, n.5; ECF No. 734, 10.  Plaintiff claims that the new information is due to Leigh Goldman's "hazy" recollection.  ECF No. 734, 10.  I find that Defendants are free to challenge Goldman about his "hazy" memory on cross examination.

5.  Plaintiff does not challenge Defendants' motion (i) to prohibit Bethea from disputing that Bethea's employment with MCB was at will or (ii) to preclude Plaintiff from introducing evidence that the Offer Letter, the Employee Handbook, and/or the Whistleblower Policy constitute contracts.  ECF No. 734, 10-11.  Plaintiff acknowledges that these facts are the law of the case; accordingly, the motions are granted.[12]

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Court Judge


Dated: April 1, 2015

---

[12] Defendants report that Plaintiff's counsel objected to the "at will employment" language contained within Attorney Defendants' proposed jury instructions, verdict form, and *voir dire*.  ECF No. 729, 10.  Plaintiff's objection is beyond reproach.  Twice, on November 27, 2006 and December 17, 2009, Plaintiff signed employment acknowledgments stating that he understood that his employment relationship with the Bank was at will.  *See* ECF No. 91 and ECF No. 37-1, ¶ 12.  In October 2011, I ruled that because Plaintiff's employment was at will, the Offer Letter and Employee Handbook did not constitute contracts of employment.  ECF No. 91, 14-15.  Further, Plaintiff later asked me to reconsider my ruling dismissing certain claims based on his at will employment status.  *See* ECF No. 493, 1-2.  Consequently, I reaffirmed my finding that Plaintiff's employment was at will in my June 4, 2013 ruling.  ECF No. 515, 2.  Now, Plaintiff does not object to the fact, acknowledging in his Opposition to Attorney Defendants' Supplemental Motion *in Limine*, that it is the law of the case.  ECF No. 734, 10-11.  I will not tolerate gamesmanship of this sort at trial.